■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN WASHINGTON, Appellant.—Judgment, Supreme Court, Bronx County (William Wallace, III, J.), rendered January 7, 1988, convicting defendant, after a jury trial, of one count of robbery in the first degree (Penal Law § 160.15), two counts of robbery in the second degree (Penal Law § 160.10), one count of burglary in the second degree (Penal Law § 140.25) and one count of criminal possession of a weapon in the fourth degree (Penal Law § 265.01) and sentencing him, as a second felony offender, to an indeterminate term of 7 to 14 years on the first degree robbery conviction, 5 to 10 years on the two second degree robbery convictions, 5 to 10 years on the burglary conviction and one year on the criminal possession of a weapon conviction, all sentences to run concurrently, is affirmed.

The evidence of defendant's guilt of a knifepoint robbery of the two persons in an apartment, while defendant was being aided by another person, is overwhelming.

The sole issue on this appeal is the Trial Judge's decision to

replace one juror who had gone to a funeral with an alternate. This action occurred after the testimony was concluded and prior to summation. The defense attorney objected and the prosecutor was not opposed to an adjournment.

CPL 270.35 authorizes a Judge to replace a juror who "is unavailable for continued service". We find that the court did not abuse its discretion in replacing the juror. While defendant claims that he has a right to be tried by a jury which he has participated in selecting, it is clear that he participated in the selection of the alternate as well as the regular jurors. While the record reveals only that the juror was attending a funeral and a burial, that event meant the loss of at least a morning session of the court. The prospect of losing jurors for whatever reason is always present during a trial. It was within the court's discretion to conclude that the trial should proceed with an alternate juror.

In *People v Page* (72 NY2d 69), the Court of Appeals set forth the standard for determining when a juror was unavailable for continued service. It stated *(supra,* at 73): "No inflexible rule or catechism was contemplated or need be judicially crafted to determine the precise parameters of when a juror is unavailable under this statutory prescription. Rather, illustrative factors that may be considered in making such determinations include the stage of trial, the expected length of the absence of the juror if known, whether the juror's return is ascertainable and reasonably imminent and certain, whether reasonable attempts have been made to locate the absent juror, and other relevant circumstances such as the continued availability of key witnesses."

In *Page (supra),* the Court of Appeals reversed a conviction when a juror had stated over the phone that she had just gotten out of bed and would be in court when she could. The reversal was based on the absence of the type of information required under the standard enunciated in *Page.* On the other hand, the Court of Appeals, in the second case decided in *Page (People v Washington),* upheld a conviction where efforts had been made to locate the juror but had failed. The juror was replaced in that second case around 11:30 A.M. While an argument can be made that an adjournment would not have prejudiced anyone here, we conclude that the court did not abuse its discretion when it decided that a juror who was absent for a funeral should be replaced. Concur—Kupferman, J. P., Ross, Ellerin and Smith, JJ.

Carro, J., dissents in a memorandum as follows: I disagree with the majority and would reverse the conviction and re-

mand the case for a new trial. It is readily apparent that the trial court committed reversible error when, over objection, it substituted an alternate juror for a sworn juror who had to attend a funeral on the morning of summations and charge.

The relevant facts are undisputed. During three days of trial proceedings, the 12 sworn jurors heard the entire body of evidence and the matter was then adjourned for the weekend, with summations and charge scheduled for Monday. That morning, the following colloquy, which culminated in the discharge of juror number 6 took place:

"THE COURT: It is my understanding that juror Number 6, Miss McMannus, has not appeared as yet.

"COURT OFFICER: Yes.

"THE COURT: Pursuant to 270.30 [sic] of the Penal Law [sic], I am going to substitute the first alternate juror for Miss McMannus, after the roll has been called.

"MR. KAISER: Your Honor, I would object to that.

*"I believe that the reason why Miss McMannus has failed to come in is because she called in and stated she had a funeral to attend this morning.*

"I do not think it is an open-ended situation, where a juror calls in sick or some other type of situation where you don't know when the jury [sic] will be available to come in and continue with the jury service.

"I don't see why there should be any necessity to rush to complete these proceedings in the absence of the juror when we know she can probably come in tomorrow

"THE COURT: All right.

"MR. GENTILE: I join in co-counsel's objection your Honor.

"THE COURT: Do you have an argument?

"MR. GENTILE: I join in the objection, your Honor.

"THE COURT: Any other reasons, additionally? How about that, Miss Notaro?

"MS. NOTARO: *People take no position, your Honor.*

"THE COURT: You are not anxious about holding off?

"Have we heard any more from the juror?

"COURT OFFICER: No, your Honor. We have to call back.

*"She said the funeral was at ten o'clock and the cemetery was in Woodlawn, following the mass.*

"THE COURT: All right, I'm not going to hold up the proceedings. I'm going to substitute the juror.

"Bring the jurors in, please.

[Whereupon, the jury was polled for their presence.]

"COURT CLERK: Juror Number 6, Miss McMannus, does not respond to the call at this time.

"THE COURT: At this time we will substitute Alternate Number 1." (Emphasis added.)

The reconstituted jury then heard the summations and charge, and retired to deliberate. Defendant argues on appeal that the substitution was unlawful and prejudicial. Upon a reading of the relevant statutes and case law, I must respectfully dissent from the majority's holding.

CPL 270.35 allows for the discharge of a juror if he or she "is unable to continue serving by reason of illness or other incapacity, or for any other reason is unavailable for continued service". However, before a trial court may discharge a juror on this basis, it must ensure that the defendant's fundamental right to be tried by the jurors he or she has had a voice in selecting is safeguarded. (People v Page, 72 NY2d 69, 73 [1988]; People v Buford, 69 NY2d 290, 297-298 [1987].)

As the Court of Appeals has recently reiterated in People v Page (supra, at 73), before a juror may be discharged, there must be "a reasonably thorough inquiry and recitation on the record of the facts and reasons for invoking [CPL 270.35]." Judge Bellacosa, writing for the court, enumerated factors to be considered by a trial court before discharging a sworn juror. These include: (1) the stage of the trial; (2) length of the juror's absence; (3) whether the juror's return was ascertainable; (4) whether the juror's return was reasonably certain or imminent; (5) what the continued availability of the witnesses was; and (6) any other relevant factors.

In the case at bar, the juror was discharged after having called the court early in the day to explain that she had to go to a funeral. This obligation could not possibly have required more than a day, and may well have required only one-half day's absence. Moreover, the juror stated that she was available for the court to return her call, and did not indicate that she was unwilling or unable to continue serving. By failing to call the juror, the court not only was unable to determine when, exactly, the juror would return, but was also unable to ascertain whether the deceased was a casual associate or a relative. Thus, the record is bare of critical information, including whether the juror would be too grief-stricken to focus upon the matters at hand. Given that the testimony had been concluded, there was no question of inconvenience to any witness. Moreover, the court should have given consideration

to the effect of removing a juror at such a late stage of the trial, particularly in light of the strenuous objection of defense counsel. Finally, it is significant that defense counsel's request for an adjournment of a single day went unopposed.

Thus, this case is on all fours with *Page (supra,* at 71-72), where the Court of Appeals reversed for a new trial because the trial court discharged a juror who had overslept without making any findings of fact or reasonable efforts to determine the juror's availability. This case cannot reasonably be analogized to the *Page* companion case, *People v Washington,* where the trial court made particularized findings of fact that the juror was not locatable, despite numerous attempts at contact, and where the only information to be had by 11:30 A.M. was that the juror was sick and went to an unnamed hospital. *(Supra,* at 72.)

For the foregoing reasons, the substitution which occurred here was unlawful and requires a reversal and a new trial.