■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JOHN ROBUSTELLI, Appellant.—Judgment, Supreme Court, New York County (Edward McLaughlin, J.), rendered December 18, 1989, which convicted defendant, after trial by jury, of four counts of criminal sale of a controlled substance in the first degree, one count of criminal sale of a controlled substance in the second degree, one count of criminal possession of a controlled substance in the second degree and six counts of criminal sale of a controlled substance in the third degree and sentenced him to concurrent prison terms of 20 years to life on each of the first degree sale counts, 8 years to life on the second degree sale and possession counts and 6 to 18 years on each of the third degree sale counts, unanimously affirmed.

Defendant was arrested after an extended undercover operation and charged with the aggregate sale of over 40 ounces of cocaine. His first argument on appeal is that he was deprived of his right to be present at an *in camera* conference with a juror who was, as a result, excused. The conference took place at the instigation of the juror, who requested an opportunity to speak with the Trial Judge. At that conference, at which the prosecutor and defense counsel were present, the juror informed the court that her aunt was undergoing cancer surgery that day and, as a result, she was uncertain that she would "be good in court that day." After a brief off-the-record colloquy, the juror was excused, without objection. Under these circumstances, we find that defendant's right to be present at all material stages of his trial was not compromised by his absence at this brief colloquy, at which the only issue which was discussed was a personal obligation of the juror *(see, People v Torres,* 80 NY2d 944; *cf., People v Antommarchi,* 80 NY2d 247).

Defendant also argues that the court improperly excused a second juror on the basis of illness. This incident occurred when the court convened on the afternoon of Thursday, December 7, 1989 after a one and one half day adjournment for the court's Wednesday calendar day and to permit the Judge

to attend a funeral on Thursday morning. Upon convening, the court announced that juror number 10 had contacted the court and stated that she was ill with an intestinal disorder, had a fever, and could not attend for the remainder of Thursday or, very probably, for Friday. Defense counsel inquired as to whether the juror would be available on Monday and the court stated that it could be assumed that she would be available by then, though it was not certain. Defense counsel thereupon stated his objection to continuing without the absent juror. The court refused, stating as its reason that other jurors had already "expressed anxiety about the duration of the trial" and clearly would be distressed by the further delay. It noted that one juror had already been excused, leaving only one alternate, and that to adjourn the trial would create a risk of a mistrial.

In *People v Page* (72 NY2d 69), the Court of Appeals held that, in determining whether to discharge a sworn juror as unavailable for service under CPL 270.35, the trial court is required to make an appropriate inquiry and consider the relevant circumstances. Among the factors which the court should consider in deciding whether to substitute an alternate are "the stage of trial, the expected length of the absence of the juror if known, whether the juror's return is ascertainable and reasonably imminent and certain, whether reasonable attempts have been made to locate the absent juror, and other relevant circumstances such as the continued availability of key witnesses." *(Supra,* at 73.)

In the case at bar, unlike in *Page (supra),* the court contacted the absent juror and conducted a sufficient inquiry concerning the circumstances of her absence and her likely return *(cf., People v Washington,* 75 NY2d 740, *revg on dissenting mem* 151 AD2d 384, 385; *People v Watkins,* 157 AD2d 301, 308-310). That inquiry revealed that the juror would almost certainly not be in on Friday and that her return on Monday was probable though not certain. Thus, under the best of circumstances, an adjournment to await the juror's return would have resulted in the loss of one and one half days of testimony. The court also took into account the other relevant circumstances, including that the trial had already been unavoidably delayed, that the other jurors were concerned about the length of the trial and that, one juror already having been excused, the longer trial necessitated by the adjournment was at risk of not being brought to conclusion with a full complement of jurors. Under these circumstances, we find that the court was entitled to excuse the absent juror in order to

continue with the trial *(see, People v Rivera,* 172 AD2d 570, *lv denied* 78 NY2d 926; *see also, People v Cruz,* 172 AD2d 383, *lv denied* 78 NY2d 964; *People v McDonald,* 143 AD2d 1050, *lv denied* 73 NY2d 857).

Defendant next contends that once the question of his competency to stand trial arose in mid-trial, the court should have ordered further psychiatric observation rather than continuing with the trial. The issue of defendant's competency first emerged when, at the end of prosecution's case on Monday, December 11, defense counsel moved to have defendant examined by a psychiatrist based on counsel's allegations that defendant had been talking to himself, and had "[gone] wild" and "blanked out" when counsel had visited him. The court granted the motion, and appointed four psychiatrists to examine the defendant. Each psychiatrist then issued a written report indicating that defendant was depressed but that further time was required to determine whether that depression was so severe as to interfere with his competency to stand trial. The court thereupon ordered a hearing.

At the hearing, it emerged that defendant had failed to respond appropriately to inquiry in two of the areas which involved his competency to stand trial, i.e., his understanding of the charges against him, which he described as involving the murder of a police officer, and his ability to assist his attorney in his defense. Doctors Kleinman and Biangasso testified that defendant appeared depressed and disoriented, but that each suspected a "volitional component" to those symptoms seeking to give the impression of substantial cognitive impairment, apparently including his lack of awareness of the charges against him. Dr. Schneider found "some element of depression" but that "there also appeared some element suggestive of a volitional component, in other words, of malingering in [defendant's] presentation." Dr. McGrath, who had stated in his written report that "there are indications that, although depressed, there is a volitional aspect to his apparent incompetency" testified that defendant appeared depressed and unresponsive. All of the doctors concluded that only through further observation were they willing to offer a definitive opinion of defendant's competence.

Among the responses reported by the doctors which they considered suspicious and indicative of malingering were defendant's inability to accurately state his age, which is very unusual, particularly in light of his ability to remember his birth date, his statement that he had not seen a Judge at all, in light of the fact that he had been on trial for over a week,

his statements that one plus one equals 121, and that Kennedy was the president of the United States. Also noted were the inconsistency between defendant's slowness of response during the interview and the lack of slowed motor activity upon leaving the interview, his ability to easily follow and respond to directions from correction officers, and his statement that, if he were released, he would "go out and have a good time," which was inconsistent with severe depression.

At the close of the hearing, the court found that it had had abundant opportunity to subject defendant to intensive observation throughout the course of trial and that that observation had taken place in the context of its familiarity with defendant's behavior gained through their frequent contacts over the prior ten months. Specifically, it noted that during trial defendant directed counsel to challenge a juror with a chemistry background, defendant consulted with counsel on the issue of whether the defense should stipulate to chemical findings, defendant conveyed his personal objection to substitution of the sick juror and defendant made a variety of jocular comments indicating his awareness of the nature of the proceedings. Based on these observations the court determined that the responses of the defendant reported by the four examining psychiatrists which, if honestly made, would indicate severe cognitive impairment, and upon which they had based their inconclusive findings as to competence, had been an attempt on defendant's part to deceive. It therefore found that the defendant was fit to stand trial.

First, we reject defendant's argument that the court was required, under CPL 730.20 (3), to order him confined to a hospital for up to thirty days in order to be subjected to further examination. This section merely provides that, once the court has ordered an examination of a defendant who is in custody, it is within the discretion of the "director" to whom the court has issued the order of examination to determine whether that examination is to be conducted in the place where the defendant is being held or in a hospital. The director is defined in CPL 730.10 (4) as "(a) the director of a state hospital operated by the office of mental health * * * or (b) the director of a hospital operated by any local government of the state that has been certified by the commissioner as having adequate facilities to examine a defendant to determine if he is an incapacitated person, or (c) the director of community mental health services." The statute does not give the director, or the psychiatrists who are ultimately appointed to conduct the examination, the power to require the court to

order further examination, which is clearly a decision that is within the discretion of the court itself.

Furthermore, we find that the court's decision finding that the evidence before it, taken as a whole, was sufficient upon which to base its determination that defendant was fit to proceed was well within its discretion. Under CPL 730.10 (1), a defendant will be deemed incompetent if "as a result of mental disease or defect [he] lacks capacity to understand the proceedings against him or to assist in his own defense." Generally, substantial deference will be accorded to the decision of the court which, in the first instance, determines a defendant's competency to proceed to trial *(see, People v Orama,* 150 AD2d 505, 506, *lv denied* 74 NY2d 744; *People v Allen,* 135 AD2d 823). In this case, the testimony by the psychiatrists revealed that the only issue to be resolved was whether defendant had exaggerated, or fabricated, his inability to sensibly respond to the questions he was asked. While all of the doctors opined simply from defendant's behavior at his examinations that they suspected that this was the case, they felt that they had not had a sufficient opportunity to observe defendant to be medically certain of this conclusion. They indicated no uncertainty, however, that, if the defendant's bizarre responses to the questions had been made in an attempt to deceive, he was otherwise competent.

Under these circumstances, the issue of whether defendant was competent was essentially a credibility determination, not a medical diagnosis. In this context, it appears clear that the court had more than sufficient information to make that determination, as it had had defendant under intermittent observation for ten months, and under almost constant observation during trial. These observations conclusively demonstrated that during the course of trial defendant demonstrated an understanding of the charges against him and an adequate ability to aid his attorney in his defense. As such, they clearly gave the lie to defendant's behavior in the examining room upon which the doctors had based their inconclusive opinions.

Finally, we find that the sentence imposed was not excessive, given the large quantities of cocaine that defendant sold to several undercover officers on ten different dates over an eight month period. It does not avail defendant to argue that he was a mere middleman *(cf., People v Broadie,* 37 NY2d 100, 112, *cert denied* 423 US 950). Concur—Rosenberger, J. P., Ellerin, Kupferman and Kassal, JJ.