**Michael BOOKER, Petitioner,**

v.

**Roy A. GIRDICH, Respondent.**

**No. 02 CV 5735(VM).**

United States District Court, S.D. New York.

May 7, 2003.

Michael Booker, Malone, NY, Pro se.

Beth J. Thomas, Asst. Atty. General, Eliot Spitzer, Attorney General of the State of New York, New York City, for Respondent.

## DECISION AND ORDER

MARRERO, District Judge.

Pro se petitioner Michael Booker ("Booker"), formerly incarcerated at New York State's Franklin Correctional Facility ("Franklin"),[1] seeks a writ of habeas

---

1. Although Booker was released from custody on September 24, 2002, after he had filed his habeas petition, his petition is not moot be-cause the "disabilities or burdens [that] may flow from" a conviction give a petitioner "a substantial stake in the judgment of convic-

corpus pursuant to 28 U.S.C. § 2254. He claims that his state court convictions for Robbery in the Third Degree and Grand Larceny in the Fourth Degree violated his rights under the Sixth Amendment of the United States Constitution because an allegedly distressed juror was not discharged from the jury and thus compromised the ability of the jury to fairly deliberate. The State of New York filed an opposition on behalf of respondent Roy A. Girdich, who was the Warden or Superintendent of Franklin. For the reasons set forth below, Booker's petition is denied.

## I. *FACTUAL BACKGROUND AND STATE PROCEEDINGS*

On March 3, 1999, Booker was convicted by a jury in Supreme Court, New York County, of Robbery in the Third Degree and Grand Larceny in the Fourth Degree (New York Penal Laws §§ 160.05 and 155.30, respectively). Booker was sentenced to two concurrent prison terms of two and one-third to seven years and one to three years, respectively.

The evidence presented at Booker's trial (the "Trial") established that early in the morning on March 16, 1998, Booker assaulted Quwana Bey ("Bey") and stole her bags, including her pocketbook. According to testimony from several witnesses at the Trial, Booker confronted Bey while she was calling on a payphone about her ride home, and after some hostile words, Booker grabbed her bags. A struggle for the bags ensued, and Booker threw Bey onto a nearby parked car. He ran away, placed the bags between two parked cars, then came back towards Bey. After the intervention of other civilians in the area, Booker ran away.

At that moment, a marked patrol car arrived, and Bey pointed at Booker as he ran and told the officers in the car that Booker had stolen her bags. Bey and another witness got into the patrol car and followed Booker, but lost him when he turned down a street that the patrol car could not turn onto because of a car coming in the opposite direction. However, a few minutes later, the patrol car and another police vehicle converged on Booker a few blocks away and, based on a positive identification by Bey and the other witness, Booker was arrested.

Booker's habeas petition does not focus on the events of the day he was arrested, but rather on the jury that convicted him, and specifically on juror number seven, Tanisha Bordan ("Bordan"). On the second day of deliberations of the jury, Bordan sent a note to the judge that said:

> Being that my vehicle was vandalized, my mind can't really focus. I really don't feel right at all. I thought that I would be fine, but I don't feel good about it at all. Being here is upsetting me more.

(Trial Transcript ("Tr."), at 453.)

Bordan was then brought before the court, outside of the presence of the other jurors, and discussed her situation with the judge presiding over the Trial, Justice Laura Visitacion–Lewis ("Justice Lewis"). The conversation, conducted on the record, revealed that the sunroof on Bordan's car had been vandalized, and this incident significantly disturbed Bordan because it had possible adverse financial consequences for her and her son, whom she was raising alone. (*See* Tr., at 456.) Justice Lewis called for a recess during which Bordan could contact her insurance company to inquire as to the financial consequences of the break-in, and the court agreed to contact Bordan's local police precinct to ask police officers to watch the car while Bordan deliberated in order to ensure that it

tion which survives the satisfaction of the sentence imposed on him." *Gamble v. U.S.,*

No. 96 Civ. 5418SJ, 1999 WL 284986, at *1 (E.D.N.Y.1999) (quotations omitted).

was not further disturbed while it remained publicly accessible via the broken sunroof. (*See* Tr., at 458–59.)

After returning from the recess, Bordan still expressed doubts that she could continue deliberating because she had "a lot of other problems and [the break-in] is making it even worse." (Tr., at 462.) Bordan further expressed her concern that the break-in "was [her] problem, and [she didn't] want to make it [Booker's] problem [or] get into any problems in the jury—in the deliberations." (Tr. at 463.) After further discussion, she agreed with Justice Lewis that she would try to put aside her personal problems and focus on her duty as a juror. (*See* Tr., at 464.)

Upon Bordan's exit from the courtroom, Booker moved for a mistrial, but this request was denied by Justice Lewis, who stated that she was "confident that if [Bordan] feels that she's really unable to [focus], that she'll communicate that to [Justice Lewis]." (Tr., at 466.) Justice Lewis left open the possibility that if Bordan sent another note, then a motion for a mistrial would be "reopened for discussion." (Tr., at 467.) However, the jury returned a verdict of guilty on both counts less than two hours later.

Booker appealed his conviction to the New York Supreme Court, Appellate Division, which affirmed the judgment, finding that Justice Lewis had properly retained Bordan as a juror. *See People v. Booker,* 282 A.D.2d 201, 723 N.Y.S.2d 22, 23 (1st Dep't 2001). The New York State Court of Appeals denied Booker's application for leave to appeal. *See People v. Booker,* 96 N.Y.2d 916, 732 N.Y.S.2d 632, 758 N.E.2d 658 (2001) (Table). Booker filed a habeas petition with this Court on July 23, 2002.

## II. *DISCUSSION*

### A. *STANDARD OF REVIEW*

■ Booker's petition is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). *See Morris v. Reynolds,* 264 F.3d 38 (2d Cir.2001). Under AEDPA, a federal court may not grant a writ of habeas corpus with respect to any claim that was "adjudicated on the merits" in state court unless the state court decision is either (1) contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d); *see also McKinney v. Artuz,* 326 F.3d 87 (2d Cir.2003). The state court's application of clearly established federal law must be objectively unreasonable, not merely erroneous. *See Williams v. Taylor,* 529 U.S. 362, 387 n. 14, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Moreover, the fact-findings of the trial court are subject to a "presumption of correctness," which can only be rebutted by a showing of "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert,* 331 F.3d 217, 233, 2003 WL 1989700, at *10 (2d Cir.2003).

In the instant case, the claim Booker raises in his petition was adjudicated on the merits in the State proceedings. *See Booker,* 723 N.Y.S.2d at 23 (finding that the deliberating juror distressed by personal problems was not "grossly unqualified" for further service). Thus, this Court is constrained under § 2254(d) to give due deference to the State court's final decision unless that determination is deemed to be an unreasonable application of, or contrary to, clearly established federal law or an unreasonable determination of the facts.

### B. *SIXTH AMENDMENT RIGHT TO FAIR AND IMPARTIAL JURY*

■ Booker argues that his Sixth Amendment right to a fair and impartial

jury was violated because the state trial court failed to excuse Bordan after she told the court she was going to have trouble continuing to deliberate because her car had been vandalized that morning. Booker asserts that based on the concerns Bordan expressed to Justice Lewis, Bordan was a "grossly unqualified" juror as such term is used in New York jurisprudence, and "allow[ing] her to continue to deliberate posed a potential risk of infringing upon [Booker's] Sixth Amendment right to a . . . trial by a fair and impartial jury." (Petition for Writ of Habeas Corpus, dated May 28, 2002, at 14.)

The Second Circuit has held that "[o]n § 2254 review, the state trial court is entitled to a presumption of correctness with respect to its conclusion that the jury was impartial." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 814 (2d Cir.2000); *see also Diaz v. Mazzuca*, No. 00 Civ. 4843, 2001 WL 170662 (S.D.N.Y. Feb. 21, 2001) ("The handling of any possible juror taint 'is entrusted to the sound discretion of the trial court.'") (quoting *Fama*, 235 F.3d at 814). Furthermore, "the Supreme Court has made it clear that 'the trial court's findings of impartiality [may] be overturned only for manifest error.'" *Knapp v. Leonardo*, 46 F.3d 170, 176 (2d Cir.1995) (quoting *Patton v. Yount*, 467 U.S. 1025, 1031, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984)). Since Booker does not cite any federal law to show how Justice Lewis' decision was contrary to any clearly established federal precedent, the Court confines its analysis to whether Booker has met his burden to rebut the presumption of correctness and demonstrate manifest error, and therefore show that Justice Lewis' decision was an unreasonable determination of the facts based on the record presented in the trial court.

■■ In concluding that Bordan was fit to continue deliberating, Justice Lewis was guided by New York Criminal Procedure Law § 270.35(1), which allows a trial court to dismiss a juror from service "at any time after the trial jury has been sworn and before the rendition of its verdict" if the trial court has a basis for a finding "that a juror is grossly unqualified to serve in the case or has engaged in misconduct of a substantial nature." N.Y.Crim. Proc. Law § 270.35(1) (McKinney 2002). To make such a finding, the court is required to undertake a "probing and tactful inquiry" on the record where it can "carefully consider the juror's answers and demeanor to ascertain whether her state of mind will affect her deliberations." *People v. Buford*, 69 N.Y.2d 290, 514 N.Y.S.2d 191, 196, 506 N.E.2d 901 (1987). A conclusion that a juror is grossly unqualified cannot be made merely because the court believes a juror's "equivocal responses" indicate possible bias. *Id.* Instead, the court must be convinced that the juror's knowledge or state of mind will prevent her from rendering an impartial verdict. *See id.*

The Court finds nothing on the record to indicate that Justice Lewis committed manifest error in determining Bordan's qualifications as an impartial juror. Justice Lewis engaged in an intensive discussion with Bordan, suggesting remedies for Bordan's predicament, reminding Bordan of the difficulties of dismissing her as a juror, and offering a sympathetic ear to Bordan as Bordan recounted the problems she faced. (*See* Tr., at 456–67.) At the end of this discussion, encouraged in part by Justice Lewis' words, Bordan agreed that she would try to continue with deliberations, and the jury soon thereafter returned with a note asking a specific question about the evidentiary requirements for finding Booker guilty. (*See* Tr., at 469–70.) About one hour later, the jury returned a unanimous verdict of guilty on both counts.

The events that rapidly unfolded after Bordan discussed her problems with Justice Lewis indicate that Bordan was able to quickly return to her duties and satisfactorily deliberate with the rest of the jury. Indeed, the jury's evidentiary question demonstrates that Bordan's presence did not deter the jury from considering the important and substantive issues raised during the Trial. Moreover, unlike jurors dismissed in other New York state court criminal proceedings, Bordan did not display any bias towards Booker based on racial animus or demonstrate a lack of mental competence. *See People v. Rodriguez*, 71 N.Y.2d 214, 524 N.Y.S.2d 422, 426, 519 N.E.2d 333 (1988) (unequivocal expression of racial bias made juror grossly unqualified); *People v. Thomas*, 287 A.D.2d 326, 731 N.Y.S.2d 32, 33 (1st Dep't 2001) (juror's confused and contradictory responses to court's extensive inquiry about her failure to locate the courthouse despite having reported there on successive dates and her encounter with another juror during lunch recess made her grossly unqualified). Finally, even if Bordan had been less than engaged in the jury's deliberations because of her personal problems, the Court is not persuaded that this behavior would have improperly swayed the decision-making abilities of all eleven other jurors, especially in the couple of hours she spent with the jury after her car had been vandalized and before a verdict was reached. Thus, the Court is not convinced that Justice Lewis' decision to retain Bordan as a juror demonstrated manifest error and led to an unreasonable determination of the facts. Accordingly, the Court denies Booker's petition.

### III. *CONCLUSION AND ORDER*

For the reasons discussed above, it is hereby

**ORDERED** that Booker's petition for a writ of habeas corpus is denied.

As Booker has not made a substantial showing of the denial of a constitutional right, a certificate of appealability will not issue. See 28 U.S.C. § 2253(c); *United States v. Perez*, 129 F.3d 255, 259–60 (2d Cir.1997); *Lozada v. United States*, 107 F.3d 1011, 1014–16 (2d Cir.1997). Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal from this Order would not be taken in good faith. See *Coppedge v. United States*, 369 U.S. 438, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The Clerk of the Court is directed to close this case.

**SO ORDERED.**