**David MCCULLOUGH, Petitioner,**

v.

**Floyd G. BENNETT, Jr., as Superintendent of Elmira Correctional Facility, Respondent.**

No. 9:99–CV–1076.

United States District Court, N.D. New York.

Oct. 29, 2003.

David McCullough, Sonyea, NY, pro se.

Eliot Spitzer, Attorney General of the State of New York, Utica, NY, G. Lawrence Dillon, Assistant Attorney General, of Counsel, for Respondent.

### MEMORANDUM–DECISION and ORDER

HURD, District Judge.

## I. INTRODUCTION

On July 12, 1999, petitioner David McCullough ("petitioner") filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, alleging entitlement to relief because of ineffective assistance of counsel at trial and on appeal. Respondent filed an answer to the petition and a memorandum of law seeking its dismissal. On June 4, 2003, Magistrate Judge Gary L. Sharpe recommended that the petition be denied and dismissed on the grounds that petitioner failed to demonstrate that his trial or appellate counsel acted unreasonably or that he was sufficiently prejudiced by their conduct. (Docket No. 40.) On June 11, 2003, petitioner filed objections to the portion of the Report and Recommendation finding that petitioner failed to demonstrate ineffective assistance of counsel at trial. (Docket No. 41.) [1]

## II. FACTS

### A. Petitioner's Trial

Based on events occurring June 18, 1995, the grand jury of Onondaga County indicted petitioner for first degree rape, first degree sodomy, second degree unlawful imprisonment, and third degree assault. Petitioner pleaded not guilty to the crimes, and the matter came on for trial on November 27, 1995. On that day, a panel of prospective jurors was seated, and the

---

1. Petitioner did not object to the portion of the Magistrate Judge's Report and Recommendation dealing with his claim of ineffective assistance of counsel on appeal.

court, Stephen L. Cimino (petitioner's trial counsel), and Bonnie A. Buccina (representing the prosecution) conducted voir dire. In questioning this first panel, Mr. Cimino reminded the prospective jurors how preconceived notions can result in an unfair trial. He received specific assurances of impartiality from two panelists who knew a family member or friend that had been a victim of sexual or physical assault. Mr. Cimino unsuccessfully challenged one prospective juror for cause due to her high blood pressure. He exercised a peremptory challenge on a woman who had been the victim of a robbery. After the first round of questioning, four jurors had been selected.

Fourteen new prospective jurors were seated for the second round of questioning. Assurances of impartiality were received from a panelist whose sister had been raped, and another panelist indicated his hope that he could be impartial despite his daughter having been raped six years prior to the trial. Mr. Cimino also received specific assurances of impartiality from a panelist whose niece had been molested by her grandfather. The prosecution did not receive assurances from yet another panelist who had been a victim of spousal abuse. Mr. Cimino successfully challenged this panelist for cause, and exercised a peremptory challenge on the man whose daughter had been raped. Thus, after the second round of voir dire, nine jurors were seated.

After the judge excused a panelist for his admission that he would draw a negative inference if petitioner did not testify in the case, a Mr. Lewis was seated on the panel. Mr. Lewis responded in the affirmative to the court's inquiry of whether he would be willing to sit as a juror in the case. A short while later, the following colloquy took place:

MS. BUCCINA: And I'm going to ask if there is anyone here that, if there was anyone that feels uncomfortable, just based on what you know about the case so far, just the nature of the case and the fact that we are dealing with some sexual offenses, does anyone have a problem with that?

\* \* \* \* \* \*

MR. LEWIS: Yes, if it's a very young girl, yes, it may.

MS. BUCCINA: Are you saying that it depends, that might have some effect?

THE COURT: This is an adult.

MR. CIMINO: This is an adult individual. Would you have a problem?

MR. LEWIS: No.

(Trial Tr., Vol. I, p. 117.) Mr. Lewis then responded in the negative to the group inquiries of whether he would hold the victim's nervousness about testifying against her, whether he would require the victim to satisfy a higher standard of credibility because of the charges involved, and whether he would think the victim had done something to deserve the alleged conduct. A short while later, the following colloquy occurred:

MR. CIMINO: How about you, Mr. Lewis? How do you feel about police officers' testimony?

MR. LEWIS: They enforce the law. They do their job.

MR. CIMINO: Do you feel that their testimony is worthy of any type of elevation simply because of the position they hold?

MR. LEWIS: No. It should be the same. I feel it should be the same, as long as they are telling the truth.

MR. CIMINO: Do you feel that you could be fair and Impartial in this case?

MR. LEWIS: No.

(Trial Tr., Vol. I, p. 124) (emphasis added). Neither the court, the prosecution, nor Mr. Cimino followed up on or clarified Mr. Lewis's answer to the last question. Mr.

Cimino did not challenge Mr. Lewis for cause, and did not exercise a peremptory challenge on him. He was empaneled as a juror.

The alternate jurors were then selected. In questioning these panelists, assurances of impartiality were received from a woman whose daughter had been the victim of domestic violence, and from another who had been the victim of a robbery.

The case against petitioner then proceeded to trial. On November 29, 1995, the jury found him guilty on all counts. Roughly two weeks later, on December 13, 1995, he was sentenced to concurrent sentences of ten to twenty years for the rape and sodomy counts, and one year for the unlawful imprisonment and assault counts.

### B. Procedural History and Claims

Petitioner appealed his conviction to the Fourth Department of the New York State Appellate Division, arguing, *inter alia*, that he was wrongfully excluded from sidebar conferences and that he was deprived of his right to effective counsel during jury selection.[2] The Appellate Division remitted the matter back to county court for a reconstruction hearing. *People v. McCullough*, 248 A.D.2d 938, 670 N.Y.S.2d 127 (N.Y.App.Div.1998). At the reconstruction hearing, a county court judge placed findings of fact on the record, none of which involved Mr. Lewis. The Appellate Division affirmed petitioner's conviction and sentences in all respects, *People v. McCul-*

lough, 254 A.D.2d 750, 679 N.Y.S.2d 227 (N.Y.App.Div.1998), rejecting, *inter alia*, "the contention of [petitioner] that he was denied effective assistance of counsel. Defense counsel made a tactical decision in selecting some members of the jury pool over others." *Id.* at 750, 679 N.Y.S.2d 227. The New York Court of Appeals denied petitioner leave to appeal. *People v. McCullough*, 92 N.Y.2d 1035, 684 N.Y.S.2d 500, 707 N.E.2d 455 (1998).[3]

### C. Magistrate Judge's Report and Recommendation

The Magistrate Judge rejected petitioner's claim that he was deprived of effective assistance of counsel at jury selection because Mr. Cimino permitted Mr. Lewis to sit as a juror. First, the Magistrate Judge noted that he was bound to give the Appellate Division's rejection of this claim some deference. The decision to allow Mr. Lewis to sit on the jury despite his admitted impartiality was then attributed to trial strategy, which the Magistrate Judge found was not shown to be unreasonable by petitioner. Finally, the Magistrate Judge found that the record was replete with so much evidence of petitioner's guilt that he could not possibly demonstrate prejudice by his counsel's decision.

## III. DISCUSSION

### A. Standard of Review

Petitioner here claims that Mr. Cimino's performance at jury selection in permitting

---

2. Before this appeal was perfected, petitioner filed a motion to vacate his conviction pursuant to N.Y.C.P.L. § 440.10, which was denied without a hearing. *People v. McCullough*, No. 95/1901, slip op. at 2. An application for leave to appeal this decision was denied by the Appellate Division. *People v. McCullough*, No. 95–734, slip op. at 1 (N.Y.App.Div. May 30, 1997).

3. Petitioner subsequently filed an application for a writ of error coram nobis, arguing he

was deprive of effective assistance of counsel by his appellate counsel's failure to challenge the county court judge's findings after the reconstruction hearing. The Appellate Division denied the application, *People v. McCullough*, No. 1075–A/98, slip op. at 1, 1999 WL 302046 (N.Y.App.Div. May 7, 1999), and the Court of Appeals denied petitioner leave to appeal, *People v. McCullough*, No. 95–734–1, slip op. at 1, 1999 WL 756144 (N.Y. July 26, 1999).

Mr. Lewis to sit as a juror violated his Sixth Amendment right to effective assistance of counsel.[4] "Provided a state court has 'adjudicated [petitioner's claim] on the merits,' 28 U.S.C. § 2254(d)(1), a federal court has only the limited authority to review a state court conviction as established in the Antiterrorism and Effective Death Penalty Act of 1996[.]" *Tueros v. Greiner*, 343 F.3d 587, 591 (2d Cir.2003). Habeas corpus relief for such a petitioner is available where the state court adjudication of the claim " 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.' " *Dallio v. Spitzer*, 343 F.3d 553, 559–60 (2d Cir.2003) (quoting 28 U.S.C. § 2254(d)). "[The Supreme Court] ha[s] made clear that the 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court 'to grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 2534–35, 156 L.Ed.2d 471 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).

### B. Unreasonable Application of Clearly Established Law

As the Supreme Court noted in *Wiggins*, 123 S.Ct. at 2535, the clearly established legal principles in claims alleging ineffective assistance of counsel were developed in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Under *Strickland*, petitioner is required to demonstrate: (1) that Mr. Cimino's failure to challenge and/or excuse Mr. Lewis from the jury was deficient when viewed from a standard of objective reasonableness, and (2) "that there is a probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." 466 U.S. at 695, 104 S.Ct. 2052.[5]

The Appellate Division, in its wholesale rejection of the contention that petitioner was deprived of effective assistance of counsel at jury selection, effectively made a decision on the merits of petitioner's claim. However, no analysis, specific discussion of Mr. Lewis, or mention of *Strickland* accompanied the Appellate Division's decision.

A case from the Sixth Circuit Court of Appeals, *Hughes v. United States*, 258 F.3d 453 (6th Cir.2001), supported in principle by the Second Circuit, *United States v. Nelson*, 277 F.3d 164 (2d Cir.2002), controls the disposition of this case. In

**4.** The Sixth Amendment to the United States Constitution guarantees to a criminal defendant both "the right to ... a trial by an impartial jury," and "the right ... to have the assistance of counsel for his defense." U.S. Const. Amend. VI; see also *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (noting that right to counsel is "the right to *effective* assistance of counsel") (emphasis added).

**5.** The Second Circuit has recognized at least two situations where the second requirement, which essentially amounts to a showing of strong prejudice, may be presumed to be satisfied. See *United States v. Rondon*, 204 F.3d 376, 379 (2d Cir.2000) (prejudice pre-

sumed where counsel is not licensed to practice law for failing to meet substantive requirements, and where counsel is implicated in the defendant's crime). Aside from these two situations, to which the presumption will be invoked "without enthusiasm," no other situations have been found to excuse a defendant from satisfying the second *Strickland* requirement. *Id.* (quotations and citations omitted); *but see Miller v. Senkowski*, 268 F.Supp.2d 296, 307 (E.D.N.Y.2003) (listing cases where prejudice was presumed for existence of actual conflict between attorney and client, where counsel was physically absent during critical stages of the proceedings, and where counsel slept through a substantial portion of the defendant's trial).

*Hughes,* the trial court judge, during voir dire, asked potential jurors if they could be fair and impartial in the defendant's trial for theft of government property. 258 F.3d at 456. The following colloquy was quoted as then occurring:

> JUROR [Jeanne Orman]: I have a nephew on the police force in Wyandotte, and I know a couple of detectives, and I'm quite close to 'em.
>
> THE COURT: Anything in that relationship that would prevent you from being fair in this case?
>
> JUROR: I don't think I could be fair.
>
> THE COURT: You don't think you could be fair?
>
> JUROR: No.
>
> THE COURT: Okay. Anybody else? Okay. Where did we leave off?

*Id.* The petitioner, Hughes, claimed that his request to trial counsel to remove the juror for cause went ignored. Counsel conducted no follow-up questions and did not exercise a peremptory challenge on the juror. He did, however, ask the jury pool in general whether they could be impartial in light of Hughes's prior criminal convictions, and if they would attach added credibility to the testimony of police officers. The juror did not respond to either inquiry. There was also no response from the juror to the court's group inquiry as to whether, given that Hughes was to be viewed as having a "clean slate," they could find him not guilty prior to trial. Hughes's counsel challenged two other jurors for cause, but declined the court's invitation to challenge any others, and did not use up his full allotment of peremptory challenges.

 "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052. However, the "broad discretion" afforded to trial counsel and the trial court in conducting jury selection "is nevertheless subject to essential demands of fairness."

*Hughes,* 258 F.3d at 457 (quotations and citation omitted). Because challenges for cause, which are a primary enforcement vehicle for a defendant's right to a fair and impartial jury, can be approved by a trial court only upon a finding of actual or implied bias, a petitioner advancing an ineffective assistance of counsel claim must show that the juror was actually biased. *Id.* at 458–59; *see also Brown v. Doe,* 803 F.Supp. 932, 943 (S.D.N.Y.1992) (citing *Murphy v. Florida,* 421 U.S. 794, 800, 95 S.Ct. 2031, 44 L.Ed.2d 589 (1975)). Actual bias can be found where a prospective juror admits partiality, or where the same can be inferred from his or her answers to voir dire questions. *See United States v. Torres,* 128 F.3d 38, 43 (2d Cir.1997). " 'Doubts about the existence of actual bias should be resolved against permitting the juror to serve, unless the prospective panelist's protestation of a purge of preconception is positive, not pallid.' " *Nelson,* 277 F.3d at 202 (quoting *Bailey v. Bd. of County Comm'rs,* 956 F.2d 1112, 1127 (11th Cir.1992)) (quoting *United States v. Nell,* 526 F.2d 1223, 1230 (5th Cir.1976)).

After stating these and other legal rules, the court in *Hughes* outlined a number of cases from the Supreme Court and Sixth Circuit where actual bias was not found, despite some doubts of impartiality having been expressed by jurors during voir dire. 258 F.3d at 458 (citing *Patton v. Yount,* 467 U.S. 1025, 1032, 104 S.Ct. 2885, 81 L.Ed.2d 847 (1984); *Murphy, supra,* 421 U.S. 794, 95 S.Ct. 2031, 44 L.Ed.2d 589; *United States v. Rigsby,* 45 F.3d 120 (6th Cir.1995); *United States v. Pennell,* 737 F.2d 521 (6th Cir.1984)). Indeed, there are numerous cases within the Second Circuit that have found a petitioner did not demonstrate a juror's actual bias. *See, e.g., Wheel v. Robinson,* 34 F.3d 60 (2d Cir.1994), *cert. denied,* 514 U.S. 1066, 115 S.Ct. 1697, 131 L.Ed.2d 560 (1995); *Booker v. Girdich,* 262 F.Supp.2d 264 (S.D.N.Y.

2003). However, these cases involved a response or follow-up by the court or trial counsel to the express admission by the jurors that they could not be fair and impartial. *See Wheel*, 34 F.3d at 63–64 (affording presumption of correctness to trial court's finding that jury was not biased because court interviewed individual jurors who expressly stated doubts, and received assurances that they were in fact impartial and had not prejudged the case); *Booker*, 262 F.Supp.2d at 268 (finding no manifest error in finding impartial a juror who expressed doubts about her ability to deliberate because trial court judge "engaged in an intensive discussion with [the juror], suggest[ed] remedies for [her] predicament, remind[ed] her of the difficulties in dismissing her as a juror, and offer[ed] a sympathetic ear to [her] as [she] recounted the problems she faced"); *see also Hughes*, 258 F.3d at 458–59 (distinguishing cases on same grounds).

Instead, in this case, again as in *Hughes*, "both the [trial] court and counsel failed to conduct the most rudimentary inquiry of [Mr. Lewis] to inquire further into [his] statement that [he] could not be fair . . . The above precedent included key elements of juror rehabilitation and juror assurances of impartiality which are absent here." *Hughes*, 258 F.3d at 458–59. The Second Circuit, in *Nelson*, agreed that some assurances of impartiality following an express admission of bias are necessary, stating that "it is important that a juror who has expressed doubts about his or her impartiality also unambiguously assure the [trial] court, in the face of these doubts, of [his or] her willingness to exert truly best efforts to decide the case without reference to the predispositions and

based solely on the evidence presented at trial." 277 F.3d at 202–03.[6]

As the court did in *Hughes*, it is here acknowledged the Supreme Court's rejection of " 'the mere existence of any preconceived notion as to the guilt or innocence of the accused, without more,' " as representing the standard for juror impartiality. *Id.* at 459 (quoting *Irvin v. Dowd*, 366 U.S. 717, 723, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961)). However, because of the absence of follow-up questions, rehabilitation, or clarification, "[Mr. Lewis's] express admission is the only evidence available to review. A district court may rely upon juror assurances of impartiality in deciding whether a defendant has satisfied his burden of proving actual prejudice. However, in this case, [Mr. Lewis] offered no assurances on which to rely." *Id.* at 459–60 (quotations and citations omitted).

■ Thus, "[g]iven [Mr. Lewis's] express admission of bias, with no subsequent assurance of impartiality and no rehabilitation by counsel or the court by way of clarification through follow-up questions . . . , [it is here found that Mr. Lewis was] actually biased in this case. In fact, without more, juror bias can always be presumed from such unequivocal statements as were made in this case." *Id.* at 460. That Mr. Lewis was not specific as to the cause or way in which he was biased—for all the record shows, he could have been biased in favor of the accused—is of no moment. While there were follow-up questions to Mr. Lewis's response that he may have a problem if the rape victim was a young girl, his subsequent response to Mr. Cimino's more general question aimed specifically at him as to whether he could be fair and impartial was not clarified by

---

**6.** The juror in *Nelson* stated that he "[h]onestly . . . didn't know" if he could be fair and impartial. 277 F.3d at 201. The Second Circuit concluded that the juror was actually biased, and that the trial court, in rejecting defense counsel's challenge for cause, abused its discretion and committed reversible error.

the court, the prosecution, or by Mr. Cimino. Thus, we are left only with Mr. Lewis's express admission—which came seven pages after the earlier follow-up questions in the trial transcript—and the lack of response or follow-up. From this record, a finding of actual bias is inevitable.

■ The court is mindful of the "presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. However, a strategic choice is one "made after thorough investigation of the law and facts relevant to plausible options." *Id.* at 690–91, 104 S.Ct. 2052. "The question of whether to seat a biased juror is not a discretionary or strategic decision." *Hughes*, 258 F.3d at 463. Indeed, "[i]f counsel's decision not to challenge a biased venireperson could constitute sound trial strategy, then sound trial strategy would include counsel's decision to waive, in effect, a criminal defendant's right to a trial by jury." *Id.* Thus, as was the case with the petitioner in *Hughes*, which presented nearly identical facts, petitioner's counsel's performance was deficient when viewed from a standard of objective reasonableness, thereby prejudicing petitioner.

It is worth noting that this is not meant to be taken as an endorsement of petitioner's innocence—for it is not—or even necessarily that Mr. Lewis's bias was impenetrable. It is merely held that on the present record, there is no choice but to conclude that Mr. Lewis held an actual bias. Here, the record shows a complete failure to follow-up or clarify or in any way inquire into an express admission of bias on the part of a juror. Such follow-up, clarification, and/or inquiry would have given Mr. Lewis the opportunity to confirm or deny the admission, or, in the event he misspoke, correct the admission.

The fact that Mr. Cimino sought out and received assurances of impartiality from several panelists throughout jury selection makes his failure to do so with respect to Mr. Lewis all the more baffling. Not only did Mr. Cimino seek and receive assurances from several panelists, but so did the court and the prosecution. It is almost as if no one—not the court, Mr. Cimino, or the prosecution—even paid attention to Mr. Lewis's answer, or as if the trial transcript is simply wrong.[7] Nevertheless, when a constitutional right is at risk, the error must be made on the side of caution. With lack of prejudice the only argument submitted by respondent in opposition, this suffices to demonstrate the merit of petitioner's ineffective assistance of counsel claim. This error by counsel, in allowing an admittedly impartial juror to sit (without even one follow-up question), contrary to the Magistrate Judge's Report and Recommendation, is far from harmless. *See Gomez v. United States*, 490 U.S. 858, 876, 109 S.Ct. 2237, 104 L.Ed.2d 923 (1989) ("Among those basic fair trial rights that can never be treated as harmless is a defendant's right to an impartial adjudicator, be it judge or jury") (quotations and citation omitted); *Nelson*, 277 F.3d at 203 n. 48. Prejudice is presumed.

## IV. CONCLUSION

Petitioner has demonstrated that he was deprived of effective assistance of counsel during the jury selection. He is entitled to a new trial. As pointed out by the Magistrate Judge, the evidence against him at trial was substantial and may again be used in a re-trial.

The Report and Recommendation is adopted as to ground one and rejected as to ground two.

---

7. No one has challenged the general accuracy of the trial transcript, or Mr. Lewis's specific answer of "no" when asked if he could be a fair and impartial juror.

Therefore, it is ORDERED that

1. Petitioner David McCullough's petition for a writ of habeas corpus is GRANTED; and

2. A writ of habeas corpus shall issue unless the State of New York grants petitioner David McCullough a new trial within ninety (90) days of this decision.

IT IS SO ORDERED.