OPINION OF THE COURT
Hancock, Jr., J.
In each of these appeals from criminal convictions defendant argues that he was deprived of his constitutional and statutory rights to a jury trial when the trial court applied an improper standard in excusing a sworn juror during the trial, over his objection. We hold that in each case there should be a reversal and a new trial.

People v Buford

During defendant Buford’s trial on charges of murder, second degree, and criminal possession of a weapon, fourth degree, the court instructed the jurors several times that if they saw anything improper, they were to report it. In a break in the testimony, the forewoman of the jury saw two prosecution witnesses leave the courthouse, enter a car, and drive off together. She approached the court clerk, described what she *294 had seen, stated that she was concerned that there might be a conspiracy, and asked whether the witnesses’ conduct was improper. The clerk assured her that the conduct was not improper but informed the Trial Judge of the juror’s concerns.
Following a motion by the prosecutor to have the forewoman excused from the jury, the court held an in camerá hearing. The ensuing colloquy took place:
"The Court * * * Let me ask you this: Would anything that you saw affect your deliberations one way or the other?
"Forewoman: No I don’t think so.
"The Court: You could still be fair to both sides?
"Forewoman: Yes.
* * *
"Prosecutor: Let me ask you this: Do you think that it would affect your ability to look at this case or do you think that — I am not being critical, but I have to know this — I understand that you wanted to know if there was any indication that there was a conspiracy.
"Honestly, is that in your mind right now that there might be some kind of conspiracy between the two of them?
"Forewoman: There was, then, but it didn’t bother me any more. After I asked the clerk, she said all right. They talk to each other.
"Prosecutor: Do you think that you might, now, because you know something, you have seen something which as you were told there is nothing wrong with that, but you know something that the other jurors don’t know. Do you think that might in some way affect your ability to look at it the same way that they do?
"Forewoman: I don’t think so.
"The Court: Is there anything that you would like to say?
"Defense Attorney: No, if you can judge the case fairly on the facts.
"Forewoman: Yes.”
Over defendant’s objections the court granted the prosecutor’s motion to excuse the forewoman stating that:
"After deliberation, it is the opinion of the Court that there might possibly be some inability on the juror’s part in failing to deliberate in an appropriate manner.
"I think that justice would be served on both sides by *295 excusing her. Her responses while she indicated that she thought she could be fair, she was hesitant and her first reaction being that there was a conspiracy, I am not certain that she is going to be able to fully divest her mind from that, and so I will excuse her.” °
The forewoman was replaced on the jury by the first alternate and the trial continued. The jury found defendant guilty of murder, second degree, in connection with his participation in the stabbing death of Charles Zorse.

People v Smitherman

Defendant Smitherman was a passenger in a taxicab which was stopped by plainclothes police officers. When the officers approached the taxicab, defendant leaned forward, opened the rear passenger door, and left the cab. One of the officers saw a revolver on the floor of the cab where appellant had been sitting. Subsequently defendant was indicted on the charge of criminal possession of a weapon, third degree.
At trial, during the prosecution’s case a police officer testified that defendant was wearing a bulletproof vest at the time of his arrest. Defendant, testifying on his own behalf, explained that he was wearing the bulletproof vest because a few weeks earlier a friend had been shot and killed. The shooting had occurred while he was talking to his friend and, as a result, he feared for his safety.[1] Following the conclusion of defendant’s direct testimony, one of the jurors asked to speak with the Trial Judge. The juror informed the court that she had personal knowledge of the shooting of defendant’s friend. She stated that although she did not witness the event, she was in the neighborhood when it occurred and had "follow[ed] the case”.
The court and the attorneys then questioned the juror in camera. Initially, the juror stated that she believed that her knowledge of the incident could affect her judgment because she knew that defendant was telling the truth about the shooting and could believe his reason for wearing the bulletproof vest. The court reminded her that jurors are not to form or express any conclusions or opinions as to the merits of the case until all the evidence has been submitted. What occurred next we quote from the record:
*296 "The Court: Do you think you could listen to all of the evidence and render a fair judgment, considering all of the evidence as produced in this case?
"Juror No. 8: Yes.
"The Court: That is basically what we are asking you to do. Now, what we’re also asking you to do is, in addition, to keep an open mind and not discuss the case, not express or form any opinions, also not to discuss the case among yourselves.
"Juror No. 8: Well, we haven’t done that.
"The Court: Do I have your assurance that if you remain with the jury at least from this point on, further, that you will not discuss—
"Juror No. 8: No, I will not discuss anything with them.
"The Court: And you will continue to listen to all of the testimony, and keep an open mind until such time as you are instructed on the law?
"Juror No. 8: Yes. Until I am instructed, yes.
* * *
"Prosecutor: You have indicated you were present when you heard about the location [sic]
"You also indicated this is going to have an affect on your ability to evaluate this statement.
"Juror No. 8:1 am saying, I can understand why that vest— that is what I am saying, because I do know what happened.
"Prosecutor: And the fact that you know what happened, is that going to have some affect on your ability to sit on that jury and listen to the testimony fairly and judge the case being presented?
"Is it going to have an affect on you?
"Juror No. 8: I can listen to the evidence. I just want you to know what I am feeling.
* * *
"Juror No. 8: I feel comfortable. I wanted you to know, okay! I don’t know whether that was the wrong feeling or not, or whether I should have kept it to myself — I’ve never really done this before. I don’t know whether he had something to do with it.
"The issue is, did he possess that gun, so, I really don’t know whether he possessed it or not. I am just talking about *297 the issue with that thing, you know, that I could sort of understand that, because I was around the neighborhood that day.
"Prosecutor: Let me ask you this: If, after this case is over and it is time for deliberations, do you think that in your heart, right now, if you found that I have proved, beyond a reasonable doubt, that he possessed that gun, do you think that the fact that you have knowledge about this incident, is that going to have an affect on you?
"Juror No. 8: If you have proved it, no, definitely not, beyond a reasonable doubt.
"Prosecutor: Will your ability to evaluate whether I proved it be affected by this incident?
"Juror No. 8: Not if you have proved it beyond a reasonable doubt. I don’t see any problem with that, or even if he did — I know what a reasonable doubt is. I assume when you do it, you have to use the evidence there, and it is not on emotion.”
The prosecution moved to have the juror excused. In granting the prosecutor’s request, the trial court noted:
"The Court in observing, [the juror], and listening to her, was struck by her apparent effort to be fair and honest. But the Court is also cognizant of the statements which do go each way, and the danger that her experience might have a special impact on her over/and above the information and experience of the other eleven jurors.
"As a rule whenever a juror has — or potential juror has particular knowledge about anything in a case, that juror must be excused, or the subject of a successful challenge for cause.
"Here, the issues are a bit more subtle.
"The Court is also concerned with the impact that is felt by all may result and might affect her differently than the other eleven jurors. It is possible that during deliberation other things might be recalled by the juror who is trying to be fair and honest.”
The first alternate replaced the juror and the trial continued. The jury returned a verdict of guilty on the charge of criminal possession of a weapon, third degree.
I
A defendant has a constitutional right to a trial by a "particular jury chosen according to law, in whose selection *298 [the defendant] has had a voice” (People v Ivery, 96 AD2d 712; People v West, 92 AD2d 620, 622 [Mahoney, P. J., dissenting], revd on dissenting opn below 62 NY2d 708; see, NY Const, art I, §2). To protect this constitutional right in criminal cases, the Legislature has enacted several procedural safeguards (see, CPL art 270). Under the statutory scheme, "[i]f at any time after the trial jury has been sworn and before the rendition of its verdict * * * the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case * * * the court must discharge such juror” (CPL 270.35 [emphasis supplied]). "This statutory test places a greater burden upon the moving party than if the juror was challenged for cause” (People v Ivery, supra; see, People v Harris, 84 AD2d 63, 91, affd 57 NY2d 335, cert denied 460 US 1047). Thus, while a trial court " 'should lean toward disqualifying a prospective juror of dubious impartiality’ ” when a juror is challenged for cause under CPL 270.20 (1) (b)[2] (People v Blyden, 55 NY2d 73, 78; People v Branch, 46 NY2d 645, 651), the standard for disqualifying a sworn juror over defendant’s objection (i.e., "grossly unqualified”) is satisfied only "when it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict” (People v West, 92 AD2d 620, 622 [Mahoney, P. J., dissenting], supra).
It has been held that a juror is grossly unqualified and must be discharged where it is discovered during trial that the juror has relations with witnesses of a business (see, People v Meyer, 78 AD2d 662, 664) or intimate nature (see, People v Rentz, 67 NY2d 829, 831) or has an actual bias against a witness. Likewise, a juror who could be a witness on a material element of the crime charged is grossly unqualified (People v Harris, 53 AD2d 1007). For similar reasons, courts have set aside jury verdicts where a juror has performed a "test” to determine the plausibility of a witness’s testimony or has reenacted the crime (see, People v Brown, 48 NY2d 388, 392; People v Crimmins, 26 NY2d 319, 323-324; People v De Lucia, 20 NY2d 275, 279-280).[3] On the other hand, a sworn juror *299 should not be discharged merely because she is irritated with one of the attorneys or disagrees with the way the evidence is presented (see, People v Ivery, 96 AD2d 712, supra; People v West, 92 AD2d 620, 622, supra).
While these and other decisions are of some guidance, each case must be evaluated on its unique facts to determine whether a particular juror must be disqualified under CPL 270.35. In reaching its conclusion, the trial court must question each allegedly unqualified juror individually in camera in the presence of the attorneys and defendant.[4] Counsel should be permitted to participate if they desire. In a probing and tactful inquiry, the court should evaluate the nature of what the juror has seen, heard, or has acquired knowledge of, and assess its importance and its bearing on the case. In this context, the court should carefully consider the juror’s answers and demeanor to ascertain whether her state of mind will affect her deliberations. The trial court’s reasons for its ruling should be placed on the record. In concluding that a juror is grossly unqualified, the court may not speculate as to possible partiality of the juror based on her equivocal responses. Instead, it must be convinced that the juror’s knowledge will prevent her from rendering an impartial verdict.
 In each of these cases there was insufficient reason to discharge the juror, over defendant’s objection, as grossly unqualified under CPL 270.35.
II
In People v Buford, the forewoman of the jury merely questioned the propriety of two witnesses talking outside the courtroom and leaving the courthouse later in the same car. Once it was explained to her that such conduct was perfectly proper, she said "it didn’t bother [her] any more”, that she could be fair to both sides, and that she did not think that what she saw would affect her verdict. In view of these responses it was certainly not "obvious that [the forewoman] possessed] a state of mind which would prevent the rendering *300 of an impartial verdict” (People v West, supra, at 622 [Mahoney, P. J., dissenting]) and it was error to discharge her.
Moreover, in discharging the forewoman, over defendant’s objections, on its findings that "there might possibly be some inability” on her part to deliberate fairly and that it was "not certain” that she would disregard her original belief concerning a conspiracy the court unquestionably applied a standard less stringent than the "grossly unqualified” standard established in CPL 270.35.
Ill
In People v Smitherman, the juror initially stated that her independent knowledge of the unrelated shooting and killing of defendant’s friend would affect her deliberations. She then indicated, however, that she understood defendant’s reason for wearing the bulletproof vest was distinct from the issue of whether he possessed the gun, that she would convict defendant if the prosecution "proved it beyond a reasonable doubt”, and that knowledge of the incident would not affect her ability to evaluate whether the prosecution proved its case. Thus, as in People v Buford, the juror’s answers were equivocal. Moreover, the events of which the juror had knowledge (i.e., the shooting and killing of defendant’s friend) pertained to a collateral question not to material facts in issue. The juror’s knowledge of this collateral matter was no greater than what the other jurors had acquired from the evidence in the case and from the facts stipulated by the parties.
From the foregoing, we conclude that as in People v Buford, the court could not have been convinced that this juror was grossly unqualified so as to warrant discharge over defendant’s objection. This conclusion is reinforced by the fact that the court, like the court in Buford, employed a standard other than "grossly unqualified” as required by CPL 270.35. This is apparent from the court’s comments that despite the juror’s attempts to be fair and honest, she must nevertheless be discharged because generally, "whenever a juror has — or potential juror has particular knowledge about anything in a case, that juror must be excused, or the subject of a successful challenge for cause” and because her knowledge "might” affect her differently during deliberations and it was "possible” that she could recall "other things” during deliberations.
We have examined defendant Smitherman’s other contention and conclude it lacks merit.
*301 Accordingly, in each of the cases the order of the Appellate Divisions should be reversed and a new trial ordered.
Chief Judge Wachtler and Judges Simons, Kaye, Titone and Bellacosa concur; Judge Alexander taking no part.
In each case: Order reversed, etc.

.A stipulation was entered into evidence that defendant’s friend had been shot and killed and that police had arrested a suspect but the Grand Jury had dismissed the charges.

.Pursuant to CPL 270.20 (1) (b) a challenge for cause may be made on the ground that a juror "has a state of mind that is likely to preclude him from rendering an impartial verdict based upon the evidence adduced at the trial” (emphasis added).

.Although courts in setting aside a verdict as tainted because of conduct or bias on the part of a juror do not apply the "grossly unqualified” *299 test under CPL 270.35, we find the cases instructive in view of the reluctance of courts to impeach jury verdicts except where there is evidence that the jury was improperly influenced.

.An in camera inquiry may not be necessary in the unusual case involving an obviously trivial matter where the court, the attorneys, and defendant all agree that there is no possibility that the juror’s impartiality could be affected and that there is no reason to question the juror.