(June 17, 2010)

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM HENDERSON, Appellant. [903 NYS2d 589]—

Spain, J.P. Appeal from a judgment of the County Court of Warren County (Hall, Jr., J.), rendered April 5, 2006, upon a verdict convicting defendant of the crimes of murder in the second degree, manslaughter in the first degree, burglary in the first degree, assault in the second degree (two counts) and burglary in the second degree (two counts).

Following a jury trial, defendant was convicted of felony murder and other charges stemming from the stabbing death of Duncan Chambers at about 4:00 A.M. on September 9, 2005 at a townhouse complex in the City of Glens Falls, Warren County. The trial testimony established that after a large quantity of crack cocaine went missing from one townhouse where drugs were being sold, a trio of defendant, Gerald Mathes and Mc-Johnny Solis (who were jointly indicted) went to another townhouse, unit 48F, and kicked in the door, believing those responsible were there; a fight broke out with the two people inside, the victim and Kendra Morelli, who were staying there temporarily with permission of the then-incarcerated tenant, Jeffrey Scott. The trio then retreated, but defendant returned with a knife and fatally stabbed Chambers in the back. Mathes was apprehended at the scene, and defendant and Solis were stopped in a vehicle about a half mile away. Mathes and Solis entered guilty pleas and agreed to testify at defendant's trial. Sentenced to an aggregate term of 30 years in prison with 10 years of postrelease supervision, defendant appeals and, finding merit to his claim that County Court committed reversible error in dismissing a sworn juror, we reverse and remit for a new trial, addressing those issues necessary in anticipation of a retrial.

Initially, defendant's challenge to the legal sufficiency of the evidence is unpreserved, given his failure to renew his motion for a trial order of dismissal at the close of all evidence (see People v Hines, 97 NY2d 56, 62 [2001]). Further, defendant presented evidence—indeed he testified at length—after county court denied the motion to dismiss at the close of the People's proof, thereby waiving review of that determination (see id. at 61; see also People v Kirkpatrick, 32 NY2d 17, 21 [1973]).

Next, defendant is not entitled to dismissal of the indictment, as he was given timely notice—when he was arraigned on the felony complaint on Friday, September 9, 2005—that the People intended to present the matter to the grand jury on Tuesday, September 13, 2005, affording him a "reasonable time" to retain and consult with counsel and decide whether to testify and to exercise this right (see CPL 190.50 [5] [a]; People v Sawyer, 96 NY2d 815, 816-817 [2001]). While defendant was confined in

the local jail over the weekend, he had access to a telephone from jail and made at least one phone call, he declined to apply for assigned counsel and rejected the People's ongoing efforts on Monday (via the Public Defender, the jail and the local criminal court) to help him apply for assigned counsel, asserting his family would be retaining counsel. When defendant appeared in court without counsel on the scheduled day, he had not and did not request to appear before the grand jury, despite the People's two-hour delay of the grand jury presentation and repeated breaks to see if he desired to testify or had retained counsel, and the indictment was handed up at the close of that day. Defendant did not retain counsel until seven days later, on September 20, 2005. Under these circumstances, defendant received timely notice and was afforded a reasonable opportunity to retain and confer with counsel and exercise his right to testify, and his motion to dismiss the indictment was properly denied (*see People v Sawyer*, 96 NY2d at 816; *People v Ballard*, 13 AD3d 670, 671 [2004], *lv denied* 4 NY3d 796 [2005]; *People v Pugh*, 207 AD2d 503, 503 [1994]; *cf. People v Degnan*, 246 AD2d 819, 820 [1998]).

Also lacking in merit are defendant's claims that he was entitled to suppression of all of his oral and written statements to police after he was apprehended. While defendant did not receive the required notice of his oral statements pursuant to CPL 710.30 (1), they were disclosed at the *Huntley* hearing in which he fully participated, thereby waiving any deficiency in the notice (*see* CPL 710.30 [3]; *People v Lazzaro*, 62 AD3d 1035, 1035-1036 [2009]; *People v Barton*, 301 AD2d 747, 748 [2003], *lv denied* 99 NY2d 625 [2003]; *see also People v Lopez*, 84 NY2d 425, 428 [1994]).

On the merits, the testimony at the *Huntley* hearing established that after being apprehended by a city police sergeant, defendant was handcuffed and taken by police car to the crime scene, although not advised of his *Miranda* rights, and made certain spontaneous oral statements en route that were properly ruled admissible (*see People v Starks*, 37 AD3d 863, 864-865 [2007]), but which the People opted not to introduce at trial. Defendant's subsequent statements regarding blood on his clothing, made in response to the police sergeant's questions designed to elicit a response, were suppressed (*see People v Ferro*, 63 NY2d 316, 322 [1984], *cert denied* 472 US 1007 [1985]), and are not in issue. The testimony further established that defendant was detained in the police booking room for approximately six hours until 10:00 A.M., when a detective read him his *Miranda* warnings, defendant indicated he understood, signed an

acknowledgment of his rights and then agreed to continue the conversation, providing a signed, written statement. The record fully supports County Court's finding that, while in custody, defendant received, understood and voluntarily waived his *Miranda* rights and willingly spoke with the police, rendering his written and subsequent oral statements admissible (*see People v Barton*, 13 AD3d 721, 722 [2004], *lv denied* 5 NY3d 785 [2005]). Given the change in the location of the questioning and police personnel, the lapse of time since the brief *Miranda* violation, defendant's prior willingness to speak and all relevant factors (*see People v Paulman*, 5 NY3d 122, 130-131 [2005]), we find that there was a sufficient, substantial break in the questioning of defendant so as to dissipate any taint from the *Miranda* violation, and that defendant's subsequent statements were admissible at trial (*see People v White*, 10 NY3d 286, 291-293 [2008], *cert denied* 555 US —, 129 S Ct 221 [2008]; *People v Chapple*, 38 NY2d 112, 115 [1975]; *People v Howard*, 72 AD3d 1199, 1201 [2010]).

We agree, however, with defendant's contention that County Court committed reversible error in dismissing a sworn juror over his objections. Under settled precedent, a defendant has a right of constitutional dimension to a trial by a particular jury, in whose selection he participated, and deprivation of this right is not subject to harmless error analysis (*see People v Anderson*, 70 NY2d 729, 730 [1987]; *People v Buford*, 69 NY2d 290, 297-298 [1987]). By statute, "[i]f at any time after the trial jury has been sworn and before rendition of its verdict, . . . the court finds, from facts unknown at the time of the selection of the jury, that a juror is *grossly unqualified* to serve in the case . . . the court must discharge such juror" (CPL 270.35 [1] [emphasis added]). A sworn juror may be discharged over defendant's objection only after a probing inquiry—assessing that juror's knowledge and its importance and bearing on the case— establishes that the particular juror "possesses a state of mind which *would prevent* the rendering of an impartial verdict" (*People v Buford*, 69 NY2d at 298 [emphasis added; internal quotation marks and citation omitted]; *see People v Lapage*, 57 AD3d 1233, 1235 [2008]). This exacting test, which requires a greater showing than a for-cause challenge (*see* CPL 270.20 [1] [b]), may not be based upon speculation as to a juror's possible partiality premised upon equivocal responses (*see People v Buford*, 69 NY2d at 298-299).

Here, the dismissed juror informed County Court that his employer had leased merchandise to Scott, the tenant of unit 48F, and the ensuing inquiry established that the juror had

been in that apartment three to four years earlier to repossess electronic items after Scott, then incarcerated, failed to timely pay a bill. The juror's responses reflected that he would impartially listen to Scott and assess his credibility, would not be influenced by his prior knowledge, and was aware the townhouses had since been renovated and he no longer knew their physical layout. Given that "[t]he juror's statements, taken as a whole, were not equivocal regarding his ability to be fair and impartial" (*People v Lapage*, 57 AD3d at 1236, citing *People v Chambers*, 97 NY2d 417, 419 [2002]; *see People v Dukes*, 8 NY3d 952, 953 [2007]; *People v Anderson*, 70 NY2d at 730) and the juror's fleeting contact with Scott years earlier did not "constitute such a close relationship of a business or personal nature as to render the juror grossly unqualified to continue serving in the case" (*People v Telehany*, 302 AD2d 927, 928 [2003]; *accord People v Lapage*, 57 AD3d at 1236; *cf. People v Littebrant*, 55 AD3d 1151, 1154 [2008], *lv denied* 12 NY3d 818 [2009]), the juror's dismissal was error. The juror exhibited no "actual bias" against Scott (*People v Buford*, 69 NY2d at 298), who was not an eyewitness to any key events related to the charges against defendant, and Scott's criminal history was, as expected, elicited by the defense for the jury to evaluate his credibility. The juror's knowledge pertained at most to collateral, not material, facts in issue (*see People v Buford*, 69 NY2d at 300).

Moreover, in dismissing the juror, county court never articulated a conclusion that the juror possessed a state of mind that would prevent his rendering an impartial verdict, the appropriate standard under *People v Buford* (69 NY2d at 298). Instead, the court concluded only that discharge was "the only fair way to do this" because "had we known [the juror] knew something about Mr. Scott, anything about Mr. Scott[,] we never would have chosen him," citing the juror's knowledge of Scott's lack of responsibility and of the particular unit. By failing to address the juror's state of mind, his assurances of impartiality, or the importance of his knowledge and its bearing on this case, the court did not apply the correct standard (*see People v Dukes*, 8 NY3d at 953; *People v Cargill*, 70 NY2d 687, 689 [1987]). In view of the foregoing, defendant's conviction must be reversed and a new trial ordered. Defendant's remaining claims either lack merit or are rendered academic by our determination.

Rose, Lahtinen, Garry and Egan Jr., JJ., concur. Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Warren County for a new trial.