[15 NYS3d 758]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LUIS PAULINO, Appellant.

First Department, July 7, 2015

## APPEARANCES OF COUNSEL

*Robert S. Dean, Center for Appellate Litigation,* New York City (*Marisa K. Cabrera* of counsel), for appellant.

*Robert T. Johnson, District Attorney,* Bronx (*Marc Eida* and *Stanley R. Kaplan* of counsel), for respondent.

## OPINION OF THE COURT

DeGrasse, J.

The primary issue before us is whether defendant's right to be free from an unlawful search and seizure was violated when the police entered his home without a warrant. We conclude that the court below correctly determined that exigent circumstances justified the warrantless entry under the particular facts of this case.

The following evidence was adduced at the suppression hearing. On March 24, 2008 at 12:30 a.m., New York City Police Department Detectives Suarez, McCrosson, Lovera and others went to a bar on Jerome Avenue, the scene of a shooting that had occurred 15 minutes earlier. One man was shot dead and another seriously wounded. Witnesses to the shooting told the detectives that the assailant was a man named Luis who drove a large black SUV. After further investigation, defendant, the registered owner of a black Nissan Armada, was determined to be the suspect in the shooting. At approximately 5:00 a.m., eight witnesses identified defendant from a series of photo arrays generated by the Police Department's photo manager system.

At 5:30 a.m., Detective McCrosson and six other detectives went to defendant's East 179th Street apartment. No one in the apartment responded to McCrosson's knock on the door. Defendant's next-door neighbor opened her door and confirmed to the detectives that defendant occupied the apartment with his wife and children. The neighbor allowed McCrosson to pass through her apartment and climb onto a fire escape that was accessible from her apartment as well as defendant's. McCrosson then knocked on defendant's bedroom window and Marisol Santiago, defendant's wife, opened the curtain. At McCrosson's direction, Santiago went to the front of the apartment and opened the door.

As Santiago opened the door, the detectives identified themselves. The detectives requested and received Santiago's permission to enter the apartment. In response to their question, Santiago told the detectives that defendant was inside. Detective Suarez then called out to defendant, who did not respond. The detectives eventually directed Santiago and her three children to a neighbor's apartment and then called the Police Department's Emergency Services Unit (ESU) for the risky task of searching for defendant in the dark apartment. Defendant was arrested after the responding ESU canine team found him hiding in a shower stall behind a piece of sheetrock. While searching for defendant's Nissan Armada, the detectives

were told by the attendant of a nearby parking lot that he also drove a black BMW that was owned by Fabian Martinez, his friend. While in the apartment, the detectives saw keys to the BMW on a table. The keys were given to Detective O'Neal by Santiago who confirmed that defendant drove the car. Santiago also directed the detectives to the BMW which was parked across the street from the apartment building.

After his arrest, defendant was taken to the 52nd Precinct where he met with Detective Suarez, who interviewed him after giving *Miranda* warnings. It is not disputed that after waiving his *Miranda* rights, defendant wrote and signed a statement detailing the events that led to his arrest. In his statement, defendant admitted that he got into an argument with two men at the bar. Feeling humiliated by the men, defendant left, went home and returned to the bar with a gun. One man broke a bottle and defendant told the men to arm themselves. According to defendant, the men struck him, and he had to defend himself. Lastly, defendant admitted that he went home, placed the gun in a bag with some drugs and then hid the gun and drugs in a car that he had borrowed from a friend. At about 11:00 a.m., defendant wrote and signed an additional statement by which he gave the police permission to search his friend's car, the black BMW. During a videotaped statement, however, defendant asserted that the BMW had already been searched when he signed the consent statement. McCrosson testified that at approximately 11:40 a.m., he along with Detective O'Neal and Sergeant Omloft searched the BMW and found the pistol with two loaded magazines and the drugs that defendant moved to suppress. By contrast, defendant's son testified at the suppression hearing that he saw police officers searching the BMW when he, his mother and his sisters were escorted from the apartment building at a time before defendant was taken to the precinct where he executed the consent statement. The differing accounts given by McCrosson and defendant's son created an issue as to whether the police searched the BMW before or after defendant consented to the search.

Defendant argued below that the gun, the drugs and his statements should have been suppressed as the fruit of an unreasonable warrantless entry into his home to effect his arrest (*see Payton v New York*, 445 US 573, 586 [1980]). He also challenged the validity of his consent to the vehicle search. Citing *People v McBride* (14 NY3d 440 [2010], *cert denied* 562 US 931

[2010]), the motion court resolved the *Payton* issue, finding the detectives' entry into defendant's home justified by exigent circumstances.

■ Factors to be considered in determining whether exigent circumstances are present include

> "(1) the gravity or violent nature of the offense with which the suspect is to be charged; (2) whether the suspect is reasonably believed to be armed; (3) a clear showing of probable cause . . . to believe that the suspect committed the crime; (4) strong reason to believe that the suspect is in the premises being entered; (5) a likelihood that the suspect will escape if not swiftly apprehended; and (6) the peaceful circumstances of the entry" (*McBride*, 14 NY3d at 446 [citations omitted]).

This list of factors is illustrative and not exhaustive (*id.*). The court's finding of exigent circumstances is supported by evidence in the record that defendant had been identified by name and from a photograph as the assailant who shot the two men at the bar only hours before. Accordingly, there was probable cause for defendant's arrest. Moreover, the Nissan Armada was traced to defendant's nearby address where there was reason to believe he could be found. There was reason to believe defendant was armed inasmuch as he was said to have left the bar with his weapon. The record also supports the court's conclusion that the circumstances of the Police Department's entry into the apartment were peaceful.

Defendant correctly argues that the motion court failed to make the essential finding of fact as to whether the search of the BMW was conducted before or after defendant consented to the search. The court was required to make the finding under CPL 710.60 (4), which provides that a court conducting a suppression hearing must "make findings of fact essential to the determination thereof." Nonetheless, on our own examination of the record, we credit the testimony of Detective McCrosson and find that the police obtained defendant's consent before they searched the BMW and recovered the pistol and drugs (*see e.g. People v Antonetti*, 251 AD2d 118 [1st Dept 1998], *lv denied* 92 NY2d 922 [1998]; *People v Morgan*, 226 AD2d 398, 400 [2d Dept 1996], *lv denied* 88 NY2d 939 [1996]). In light of the overwhelming evidence of defendant's guilt, the admission of his statements, even if erroneous under *Payton*, would have been harmless beyond a reasonable doubt (*see e.g. People v*

*Minley*, 68 NY2d 952 [1986]; *People v Maldonado*, 75 AD2d 558 [1st Dept 1980]). We particularly note that, as shown below, defendant was convicted of nothing more than crimes he admitted during his trial testimony. Accordingly, we conclude that defendant's motion to suppress the physical evidence and his statements was properly denied.

At trial, a jury acquitted defendant of murder in the second degree, assault in the first degree and the other counts related to the shootings. Defendant was convicted of criminal possession of a weapon in the second degree, and criminal possession of a controlled substance in the second degree. These two counts relate solely to the gun and drugs that the police recovered from the BMW.*

■ Defendant argues that he "was deprived of his right to counsel when the trial court summarily denied his oral request for reassignment of counsel without conducting any inquiry or . . . giving him an opportunity to discuss the grounds for his motion." The argument lacks merit. During jury selection, defense counsel advised the court that he and defendant disagreed with respect to the use of peremptory challenges. The court indicated that it would not appoint new counsel. Upon requesting and receiving permission to address the court, defendant stated the following:

> "Your Honor, I would like to tell your Honor that I have spoken with my lawyer about the case here about issues that I believe would be favorable to me and I think he disagrees with what I have to say. This is not the first time. It has happened about five times already. He never agrees with what I'm saying."

Whether counsel is substituted is within the discretion of the trial court (*People v Porto*, 16 NY3d 93, 99 [2010]). Once a seemingly serious request for the assignment of new counsel is made the court must make at least a "minimal inquiry" as to "the nature of the disagreement or its potential for resolution" (*id.* at 99-100, quoting *People v Sides*, 75 NY2d 822, 825 [1990]). Based on the foregoing colloquy, we find that the court made the minimal inquiry required by *Porto* and *Sides* and allowed defendant to air his disagreement with counsel. Although the court initially denied defendant's application without in-

---

* Against the advice of counsel, defendant testified at trial that after shooting the two men, he hid the gun and drugs in the BMW.

quiry, there was no abuse of discretion because defendant was later allowed to voice his concerns about defense counsel (*see People v Nelson*, 7 NY3d 883, 884 [2006]). In any event, defendant's expressed disagreement with his attorney's strategy did not constitute good cause for the reassignment of counsel (*see People v Newell*, 200 AD2d 451 [1st Dept 1994]).

Defendant next argues that the court erred in failing to conduct an inquiry pursuant to *People v Buford* (69 NY2d 290 [1987]) with respect to a juror's absence on a trial day. On February 7, 2012, during the third week of trial, juror number nine failed to appear at court and could not be reached by court personnel. With the consent of counsel, the court adjourned the trial for two days in order to enable a court officer to check on the juror at his home. On the adjourned date, the court officer reported that she met with juror number nine who told her that he wasn't feeling well and that he had told Justice Webber that he would return to court on February 9, 2012. It was undisputed that no such conversation between the court and the juror occurred. The court decided to continue with the trial and address the juror's conduct at its conclusion. Defense counsel stated that he was concerned about the juror's fitness to continue with the trial. The court declined to conduct the requested inquiry and the trial continued to verdict. Defendant argues that the court erred in denying his request for a *Buford* inquiry. We disagree.

■ To the extent applicable, CPL 270.35 (1) provides that a court must discharge a sworn juror where "the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case or has engaged in misconduct of a substantial nature, but not warranting the declaration of a mistrial." Defendant does not argue on appeal that the juror was grossly unqualified or that his apparent misconduct was substantial. Defendant's only claim of error stems from the court's refusal to conduct a *Buford* inquiry. Viewed in light of the request made before the trial court, defendant's argument is based on a misconstruction of *Buford*. As stated by the Court of Appeals, the purpose of *Buford* was the creation of "a framework by which trial courts could evaluate sworn jurors who, for some reason during the trial, may 'possess[ ] a state of mind which would prevent the rendering of an impartial verdict'" (*People v Mejias*, 21 NY3d 73, 79 [2013]). A juror with such a state of mind would be "grossly unqualified" (*Buford*, 69 NY2d at 298). Defendant did not request

an inquiry contemplated by *Buford*. Instead, defense counsel's request was that the juror be brought into the courtroom and questioned "to see if he repeats these obvious lies" under oath. This request, in actuality, was for the court to set the stage for the juror to perjure himself and thereby engage in substantial misconduct if he chose to do so. Such ensnarement would not serve the purpose of CPL 270.35.

Moreover, not every misstep by a sworn juror is indicative of substantial misconduct or renders the juror grossly unqualified (*cf. People v Rodriguez*, 100 NY2d 30, 35-36 [2003]). It follows that a determination of whether an inquiry by the court is warranted should be based on the unique facts of each case (*cf. Buford*, 69 NY2d at 299-300). For this reason we distinguish *People v Ventura* (113 AD3d 443 [1st Dept 2014], *lv denied* 22 NY3d 1203 [2014]), a case defendant cites. In *Ventura*, a New York County case, the trial court denied defense counsel's request for an in camera inquiry with respect to a sworn juror who disclosed toward the end of the trial that she had been invited to attend a breakfast at which the New York County District Attorney was scheduled to speak (*id.* at 444). We reversed, finding that the disclosure of the breakfast invitation "indicated a possible issue related to that juror's continued ability to serve in an impartial manner" (*id* at 444-445). Our focus in *Ventura* was on the possibility of juror bias as we did not "know when the breakfast invitation arrived or whether it impacted the juror's ability to assess the case in an evenhanded manner" (*id.* at 445-446). By contrast, it cannot be seriously argued in this case that juror number nine's temporary absence from the trial and his inaccurate statement to the court officer indicated bias one way or the other. Defendant also misplaces his reliance upon *Dyer v Calderon* (151 F3d 970 [9th Cir 1998], *cert denied* 525 US 1033 [1998]), in which it was held that a juror who perjured herself during voir dire was unfit to serve (*id.* at 983). Unlike juror number nine's out-of-court statement, the voir dire involved in *Dyer* was presumably conducted under oath (*see e.g. People v Cissna*, 182 Cal App 4th 1105, 1115, 106 Cal Rptr 3d 54, 61 [Ct App, 4th Dist 2010]). Accordingly, we also distinguish *People v LaFontaine* (190 AD2d 609 [1st Dept 1993], *lv denied* 81 NY2d 1015 [1993]), in which we held that the trial court did not err in discharging a sworn juror who, among other things, "*committed perjury* in his explanation for an unexcused absence" (*id.* at 610 [emphasis added]).

Finally, in light of the nature of defendant's crimes and his criminal record, we find no reason to disturb the sentence

imposed by the court. We have considered defendant's remaining contentions and find them unavailing.

Accordingly, the judgment of the Supreme Court, Bronx County (Troy K. Webber, J.), rendered April 20, 2012, convicting defendant, after a jury trial, of criminal possession of a weapon in the second degree, and criminal possession of a controlled substance in the second degree, and sentencing him to an aggregate term of 22 years, should be affirmed.

TOM, J.P., FRIEDMAN, ANDRIAS and GISCHE, JJ., concur.

Judgment, Supreme Court, Bronx County, rendered April 20, 2012, affirmed.