Appeal from a judgment of the Supreme Court, Erie County (Christopher J. Burns, J.), rendered October 28, 2014. The judgment convicted defendant, upon a jury verdict, of murder in the second degree and predatory sexual assault against a child.
It is hereby ordered that the judgment so appealed from is reversed on the law and a new trial is granted.
Memorandum: Defendant appeals from a judgment convicting him upon a jury verdict of murder in the second degree for the depraved indifference killing of a person less than 11 years old (Penal Law § 125.25 [4]), and predatory sexual assault against a child (§ 130.96). On September 15, 2013, at around 7:30 p.m., defendant called 911 to report as unconscious his girlfriend’s five-year-old son, with whom defendant had been home alone for approximately six hours. First responders found the child lying motionless on the living room floor. He arrived at the hospital with numerous injuries including a severely fractured skull, swelling and graying of the brain, a core body temperature of 89 degrees, and lacerations and abrasions to his anal and rectal areas. The child died from his injuries two days later. When the police confronted defendant with the evidence of the child’s anal and rectal injuries, he became “very agitated” and said that he would tell the truth if the police *1619 “didn’t charge him with rape.” At trial, the child’s physicians testified that his head injury was of a kind usually associated with “high speed, high velocity” incidents such as a car crash or an “assault with a baseball bat,” and his anal and rectal injuries were consistent with traumatic penetration and “required some force” to inflict. The physicians further testified that the child’s body temperature indicated that he suffered his head injury two to three hours before he arrived at the hospital, and that the graying of his brain matter indicated a prolonged period of lack of oxygen. That timing estimate was consistent with evidence of defendant’s cell phone records, which showed an unusual lapse in text messaging from his phone between 4:18 p.m. and 4:52 p.m. Furthermore, a forensic biologist testified that genetic material found on the inside rear portion of the child’s underwear matched defendant’s DNA profile, and that the probability of finding a match from individuals in the United States is 1 in 7.758 billion. Although the test on the genetic material to determine the presence of semen was inconclusive, the biologist testified that the material “did not have the visual appearance of a blood stain.”
In light of the child’s utter dependence on defendant as his caregiver, and the evidence of defendant’s physical assault on the child and failure to seek immediate medical help, we reject defendant’s contention that his conviction of depraved indifference murder of a person less than 11 years old is not based on legally sufficient evidence of “ ‘utter disregard for the value of human life’ ” (People v Barboni, 21 NY3d 393, 400 [2013]; see generally People v Bleakley, 69 NY2d 490, 495 [1987]). We reject defendant’s further contention that his conviction of predatory sexual assault against a child is not based on legally sufficient evidence of anal sexual conduct. Contrary to defendant’s contention, “penetration may be proven by circumstantial evidence” (People v McDade, 64 AD3d 884, 886 [2009], affd 14 NY3d 760 [2010]). In addition, viewing the evidence in light of the elements of the crimes as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence (see generally Bleakley, 69 NY2d at 495).
We nonetheless agree with defendant that Supreme Court erred in failing to make a proper inquiry of two jurors who allegedly were overheard making disparaging comments about defendant during a recess. “If at any time after the trial jury has been sworn and before the rendition of its verdict, . . . the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case *1620 . . . the court must discharge such juror” (CPL 270.35 [1]). The standard for discharging a sworn juror is satisfied “ ‘when it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict’ ” (People v Buford, 69 NY2d 290, 298 [1987]; see People v Dennis, 91 AD3d 1277, 1279 [2012], lv denied 19 NY3d 995 [2012]). There is a well-established framework by which the court must evaluate a sworn juror who, for one reason or another, may possess such a state of mind (see People v Mejias, 21 NY3d 73, 79 [2013], rearg denied 21 NY3d 1058 [2013]; see generally Buford, 69 NY2d at 298-299).
To make a proper determination, the court “must question each allegedly unqualified juror individually in camera in the presence of the attorneys and defendant” (Buford, 69 NY2d at 299). “In a probing and tactful inquiry, the court should evaluate the nature of what the juror has seen, heard, or has acquired knowledge of, and assess its importance and its bearing on the case” (id.). During the inquiry, “the court should carefully consider the juror’s answers and demeanor to ascertain whether [his or] her state of mind will affect [his or] her deliberations” (id.). That accomplished, the court must place the reasons for its ruling on the record (see id.).
It has been emphasized repeatedly that “ ‘each case must be evaluated on its unique facts’ ” (Mejias, 21 NY3d at 79, quoting Buford, 69 NY2d at 299). To that end, the court must hold a Buford inquiry whenever there are facts indicating the possibility of juror bias, and must not base its ruling on speculation (see People v Henry, 119 AD3d 607, 608 [2014], lv denied 24 NY3d 961 [2014]; People v Dotson, 248 AD2d 1004, 1004 [1998], lv denied 92 NY2d 851 [1998]). Not only does the court’s failure to hold an inquiry under such circumstances constitute reversible error, but its failure to place the reasons for its ruling on the record also constitutes reversible error (see People v Porter, 77 AD3d 771, 773 [2010], lv denied 16 NY3d 799 [2011]). Such errors are not subject to harmless error analysis (see Mejias, 21 NY3d at 83).
In the instant matter, before the jury began deliberating, one of defendant’s friends, who had been observing the proceedings, reported that she had overheard two jurors using a derogatory term to refer to defendant. The court called the observer to the witness stand, where she identified two jurors whom she observed “outside smoking a cigarette talking about [defendant being] a scumbag . . . [and] in the back row laughing and making faces.” Based on those observations, defense counsel asked the court to perform an inquiry of the two jurors. *1621 The prosecutor opposed an inquiry, and instead asked the court to “make a ruling as to whether [it found] this description credible first.” The court denied defendant’s request and stated: “I don’t - -1 don’t believe that an inquiry of the juror is necessary or appropriate here . . . [b]ased on what I heard.” The court failed to conduct an inquiry of the jurors.
We respectfully disagree with our dissenting colleagues that the court lacked sufficient credible information indicating the possibility of juror bias. The court’s ruling that an inquiry was not “necessary or appropriate” was conclusory and, contrary to the People’s contention, did not constitute an implied determination that the observer’s testimony was incredible. Unlike in People v Matiash (197 AD2d 794 [1993], lv denied 82 NY2d 899 [1993]), where the trial court made a thorough record explaining why the alleged juror misconduct was innocuous and thus did not warrant further inquiry (id. at 795), here the court did not explain on the record its reasons for denying defendant’s request. Based on the record before us, we are compelled to conclude that the jurors’ alleged reference to defendant as a “scumbag” indicated the possibility of juror bias, and thus that the court should have granted defendant’s request to make an inquiry of the jurors. “[I]t might have been that removal of the juror [s] would have been unnecessary if a specific inquiry had been made by the court or counsel, but in the absence of such an inquiry, we cannot be certain that the defendant was fairly convicted” (People v Ventura, 113 AD3d 443, 446 [2014], lv denied 22 NY3d 1203 [2014]). We therefore reverse the judgment and order a new trial.
Because a new trial must be held, we address in the interest of judicial economy defendant’s contention that the court erred in refusing to charge him with manslaughter in the second degree as a lesser included offense. We reject that contention. Manslaughter in the second degree is not a lesser included offense of depraved indifference murder of a person less than 11 years old (see People v Santiago, 101 AD3d 1715, 1716 [2012], lv denied 21 NY3d 946 [2013]; see generally People v Leak, 129 AD3d 745, 746 [2015], lv denied 26 NY3d 969 [2015]).
Finally, in light of our determination, defendant’s challenge to the severity of the sentence is moot.
All concur except Smith, J.P., and Peradotto, J.,
who dissent and vote to affirm in accordance with the following memorandum.