People v Watkins (2021 NY Slip Op 07565)





People v Watkins


2021 NY Slip Op 07565


Decided on December 29, 2021


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 29, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

LEONARD B. AUSTIN, J.P.
SYLVIA O. HINDS-RADIX
BETSY BARROS
LARA J. GENOVESI, JJ.


2019-14585
 (Ind. No. 979/18)

[*1]The People of the State of New York, respondent,
v
Rahmel Watkins, appellant.


Martin Goldberg, Franklin Square, NY, for appellant.
Joyce A. Smith, Acting District Attorney, Mineola, NY (Kevin C. King and Michael J. Blach of counsel), for respondent.



DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Nassau County (Fran Ricigliano, J.), rendered December 3, 2019, convicting him of criminally negligent homicide (two counts), assault in the second degree (four counts), reckless driving, and reckless endangerment in the second degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is affirmed.
In the early morning hours of April 4, 2018, the defendant was in Far Rockaway, Queens, with a female companion, Zakiyyah Steward, and others. The defendant was driving back to Brooklyn with his female companion as his passenger when she received a telephone call from Steward asking them to accompany her to the casino at the Aqueduct Racetrack. The defendant changed course and met up with Steward in her vehicle and the driver of a third vehicle, and drove with them in the direction of the casino. The defendant testified that although he did not know how fast Steward was driving,"[f]or the most part" he was "keeping up with her." While the defendant drove to the casino, several telephone calls were made between his passenger and Steward, but the content of those telephone calls is not known.
The defendant testified that Steward was driving erratically, including braking and veering to the left. The defendant stated that, as a result of Steward's erratic driving, before the parties reached the intersection of the Nassau Expressway and Burnside Avenue, he moved into the left lane and attempted to pass Steward's vehicle for his own safety. He did not slow down. Surveillance videotape showed the vehicles driven by Steward and the defendant traveling alongside each other through the intersection at a high rate of speed, with the defendant's vehicle traveling in the left lane. After a few seconds, the defendant veered to the left into the opposing lane of travel. Once through the intersection, the defendant's vehicle, in the left lane, swerved into the right lane and then back to the left. Shortly thereafter, a bright flash of light, which appears to be an explosion, can be seen on the surveillance video. The defendant's vehicle struck the concrete median, and careened over the median and into the opposing lane of travel. Once in the opposing lane of travel, the defendant's vehicle struck the front end of a Nissan Altima, which was traveling in the left lane, "went airborne," and landed on an Infiniti, which was traveling in the right lane. The defendant's vehicle continued through the opposing lane of travel and eventually came to a rest in the bushes on [*2]the other side of the guardrail. The Nissan Altima was engulfed in flames. The engine of the defendant's vehicle separated from the body and landed in front of the Infiniti. The crash caused the deaths of the two individuals in the Nissan Altima as well as serious injuries to the occupant of the Infiniti, and to the defendant's passenger.
The posted speed limit on the Nassau Expressway is 40 miles per hour. The defendant conceded that he was driving at least 60 miles per hour. The People presented evidence that Steward was driving between 78 and 91 miles per hour and the defendant was driving between 100 and 110 miles per hour.
The People noted in summation that the defendant drove behind Steward for miles. The defendant then decided to pass Steward's vehicle, resulting in the accident. The People further argued that the accident was not Steward's fault.
Following a jury trial, the defendant was convicted of two counts of criminally negligent homicide, four counts of assault in the second degree, reckless driving, and reckless endangerment in the second degree. The defendant appeals.
Viewing the evidence in the light most favorable to the prosecution (see People v Contes, 60 NY2d 620, 621), we find that it was legally sufficient to establish the defendant's guilt beyond a reasonable doubt. Moreover, in fulfilling our responsibility to conduct an independent review of the weight of the evidence (see CPL 470.15[5]; People v Danielson, 9 NY3d 342), we nevertheless accord great deference to the jury's opportunity to view the witnesses, hear the testimony, and observe demeanor (see People v Mateo, 2 NY3d 383; People v Bleakley, 69 NY2d 490). Upon reviewing the record here, we are satisfied that the verdicts of guilt were not against the weight of the evidence (see People v Romero, 7 NY3d 633). Indeed, it is clear from this record that the defendant's guilt was established by overwhelming evidence.
The Supreme Court erred in charging the jury regarding accomplice liability, based upon a theory that the defendant acted in concert with Steward. There was no reasonable view of the evidence which supported that instruction.
A person is liable as an accessory when he or she "solicits, requests, commands, importunes or intentionally aids" another person to engage in conduct which constitutes an offense while acting with the mental culpability for the commission of that offense (Penal Law § 20.00), which can include the mental culpability of recklessness and criminal negligence (see People v Killane, 203 AD2d 386; People v Flayhart, 136 AD2d 767, affd 72 NY2d 737; People v Abbott, 84 AD2d 11). The defendant must have a shared mental culpability or "community of purpose" with the principal (People v Cabey, 85 NY2d 417, 421 [internal quotation marks omitted]).
In the instant case, evidence of a community of purpose was lacking. The evidence indicated that the defendant and Steward were going to the same destination at the Aqueduct Racetrack—which was not a crime—and the defendant attempted to keep up with Steward, who was speeding. The defendant could have used GPS for directions, instead of traveling with Steward, but that in and of itself was not evidence of a community of purpose with Steward to drive recklessly. Further, the fact that the defendant's passenger was communicating with Steward over a cell phone during the trip is not evidence of a community of purpose between the defendant and Steward to drive recklessly. There is no evidence in the record that the defendant's decision to attempt to pass Steward was other than his alone: a spontaneous decision is not subject to liability for acting in concert (see People v Monaco, 14 NY2d 43).
However, that decision involved driving at yet a higher rate of speed than Steward and at more than double the posted speed limit, in the left lane near opposing lanes of travel, next to Steward's vehicle which the defendant acknowledged had been traveling erratically. In so doing, the defendant exhibited conduct which was significantly more culpable than Steward's conduct. We conclude that, in view of the overwhelming evidence of the defendant's guilt, the application of that instruction to the facts of this case could not have affected the outcome of the trial, since there was [*3]no significant probability that the verdict was based upon the defendant's alleged acting in concert with Steward. Indeed, the prosecutor acknowledged in summation that the accident was not Steward's fault. Therefore, the error was harmless (see People v Badalamenti, 27 NY3d 423, 439; cf. People v Martinez, 83 NY2d 26, 35; see generally, Lifson v City of Syracuse, 17 NY3d 492, 498).
Turning to the defendant's contention with respect to juror misconduct, "[i]f at any time after the trial jury has been sworn and before the rendition of its verdict, . . . the court finds, from facts unknown at the time of the selection of the jury, that a juror is grossly unqualified to serve in the case or has engaged in misconduct of a substantial nature, but not warranting the declaration of a mistrial, the court must discharge such juror" (CPL 270.35[1]). "A juror who has not heard all the evidence in the case is grossly unqualified to render a verdict" (People v Simpkins, 16 AD3d 601, 601). "[E]ach case must be evaluated on its unique facts to determine whether a particular juror must be disqualified under CPL 270.35" (People v Buford, 69 NY2d 290, 299). "In reaching its conclusion, the trial court must question each allegedly unqualified juror individually in camera in the presence of the attorneys and defendant" (id. at 299). The trial court "generally is accorded latitude in making the findings necessary to determine whether a juror is grossly unqualified under CPL 270.35, because that Judge is in the best position to assess partiality in an allegedly biased juror" (People v Spencer, 29 NY3d 302, 310 [internal quotation marks omitted]).
Here, the Supreme Court did not err when it denied the defendant's application to discharge a particular juror. After questioning the juror in camera, the court accepted the juror's assurances that he had used his cell phone only during breaks and when exhibits were being marked, that he had not missed any testimony, and that he was giving his full attention to the trial. Moreover, the juror permitted the court to examine his phone, and the court confirmed that the juror had not sent text messages or emails during the presentation of evidence. The court was in the best position to determine whether the juror was being truthful, and there is no basis in the record to disturb the court's findings (see id.). Because the juror heard all of the evidence and was only using his phone when evidence was not being presented, the court correctly found that he was not grossly unqualified and declined to discharge him (see People v Poole, 154 AD2d 560, 561; cf. People v Simpkins, 16 AD3d at 601). The defendant's contention that the juror must not have been paying attention to the trial because of the substance of the text messages is speculative and is contradicted by the juror's assurances that he was giving his full attention to the trial. The defendant's contention that the court should have questioned the other jurors regarding their own cell phone use and whether the subject juror's cell phone use had distracted them is unpreserved for appellate review (see People v Bradley, 38 AD3d 793, 794), and, in any event, without merit.
The defendant's contention that the Supreme Court erred in charging the jury with regard to criminally negligent homicide is without merit. The charge mirrored the language of the New York Criminal Jury Instructions and properly conveyed to the jury "the material legal principles applicable to" this case (CPL 300.10[2]; see People v Sadian, 81 AD3d 987, 987-988).
The defendant's contention regarding voir dire is unpreserved for appellate review, and we decline to review it in the exercise of our interest of justice jurisdiction (see CPL 470.05[2]).
The defendant's remaining contention is without merit.
AUSTIN, J.P., HINDS-RADIX, BARROS and GENOVESI, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court