People v Mentor (2023 NY Slip Op 00677)

People v Mentor

2023 NY Slip Op 00677

Decided on February 8, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on February 8, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

MARK C. DILLON, J.P.
FRANCESCA E. CONNOLLY
CHERYL E. CHAMBERS
PAUL WOOTEN, JJ.

2019-08335
 (Ind. No. 1865/17)

[*1]The People of the State of New York, respondent,
v
Stanley Mentor, appellant.

Patricia Pazner, New York, NY (Sean H. Murray of counsel), for appellant.
Melinda Katz, District Attorney, Kew Gardens, NY (Johnnette Traill, William H. Branigan, and Andrew Zane Wu of counsel; Jonathan E. Maseng on the brief), for respondent.

DECISION & ORDER
Appeal by the defendant from a judgment of the Supreme Court, Queens County (Ronald D. Hollie, J.), rendered May 21, 2019, convicting him of robbery in the first degree, robbery in the second degree, criminal possession of a firearm, and criminal possession of stolen property in the fifth degree, upon a jury verdict, and imposing sentence.
ORDERED that the judgment is reversed, on the law, and a new trial is ordered.
On the second day of trial, defense counsel told the Supreme Court that the defendant had observed that juror number two had his head down with his eyes closed during the cross-examination of the arresting police officer. The prosecutor indicated that she had also observed that juror number two had his head down during the cross-examination. Defense counsel further relayed the defendant's observation that two other jurors had elbowed juror number two. Defense counsel requested an inquiry of juror number two to ask him if he had fallen asleep. In the presence of the defendant and counsel, the court advised juror number two that his service required "not sleep[ing] during the trial," and juror number two replied, "I'm trying my best." The court then asked juror number two if he thought he heard everything that happened that morning, and juror number two responded, "I believe so." The court asked juror number two, "You're not quite sure?" to which juror number two responded, "Yes."
In response to further questioning later that day, juror number two stated that he thought he heard everything, he did not think that he missed any part of the proceedings, and he was "reasonably confident" that he did not miss anything. Thereafter, defense counsel made an application to have juror number two removed as grossly unqualified on the ground that he was sleeping during the proceedings. The Supreme Court denied the application.
Approximately two weeks later, defense counsel stated that juror number two seemed to struggle to stay awake during summation, although she did not think that the juror was sleeping. Later that day, defense counsel stated that during the jury instructions, she had observed juror number two with his "head fully back, eyes closed, mouth dropped," and then he "jolt[ed] [his] head back up." Defense counsel again applied to remove juror number two "because he has demonstrated [*2]through the course of this trial that he has fallen asleep, or that he is extremely sleepy." The Supreme Court questioned juror number two for the third time in the presence of the defendant and counsel, and juror number two responded that he had heard everything the court said, that he understood "[m]ore or less" what the court was saying, and that he knew he could send the court a written note for clarification. Defense counsel stated that she had a question for juror number two, which the court prevented defense counsel from asking. The court denied the application to remove juror number two. The jury convicted the defendant of robbery in the first degree, robbery in the second degree, criminal possession of a firearm, and criminal possession of stolen property in the fifth degree. The defendant appeals.
"A defendant has a constitutional right to a trial by an impartial jury . . . chosen according to law and in whose selection the parties have participated" (People v Batticks, 35 NY3d 561, 565; see People v Kuzdzal, 31 NY3d 478, 483; People v Buford, 69 NY2d 290, 297-298). "To protect this constitutional right, the legislature has enacted several procedural safeguards in CPL article 270" (People v Batticks, 35 NY3d at 565; see People v Buford, 69 NY2d at 298). "After the jury is sworn, but before the rendition of the verdict, the court's authority to discharge an incompetent juror is set forth in CPL 270.35 and is narrowly circumscribed" (People v Batticks, 35 NY3d at 565). "Given the gravity of a juror's oath, the court's removal of a sworn juror 'places a greater burden upon the moving party' than if a prospective juror 'was challenged for cause,' and 'is satisfied only when it becomes obvious that a particular juror possesses a state of mind which would prevent the rendering of an impartial verdict'" (id., quoting People v Buford, 69 NY2d at 298). "A juror who has not heard all the evidence in the case is grossly unqualified to render a verdict" (People v Simpkins, 16 AD3d 601, 601; see People v Watkins, 200 AD3d 1078, 1081).
In reaching its conclusion, the trial court must question each allegedly unqualified juror individually in camera in the presence of counsel (see People v Darby, 75 NY2d 449, 453; People v Buford, 69 NY2d at 299). "Counsel should be permitted to participate if they desire" (People v Buford, 69 NY2d at 299). The "proceeding should be a 'probing and tactful inquiry' into the 'unique facts' of each case, including a careful consideration of the juror's 'answers and demeanor'" (People v Rodriguez, 71 NY2d 214, 219, quoting People v Buford, 69 NY2d at 299). The trial court "generally is accorded latitude in making the findings necessary to determine whether a juror is grossly unqualified under CPL 270.35" (People v Spencer, 29 NY3d 302, 310 [internal quotation marks omitted]).
Under the totality of the circumstances here, the Supreme Court did not conduct a sufficiently probing and tactful inquiry of juror number two (see People v Sanchez, 99 NY2d 622, 623; People v Porter, 77 AD3d 771, 772; People v Thomas, 196 AD2d 462; People v Anderson, 123 AD2d 770, 774). The court never asked juror number two during any of the inquiries if he had fallen asleep or was sleepy. During the third inquiry, the court did not ask juror number two about defense counsel's specific observations, including that juror number two had allegedly put his head back with his eyes closed and his mouth dropped. The court also failed to ask juror number two what he meant by his equivocal statement that he "[m]ore or less" understood the jury charge, or to ask if there were any specific portions of the jury charge that juror number two did not understand. Although the court did state at one point that "[w]e have not seen [juror number two] sleeping," the statement, in context, indicates that the court was correcting defense counsel's misstatement, rather than making its own observation. Likewise, a statement by a court officer that he had not observed juror number two sleeping was not determinative in this case because defense counsel's assertion that the officer was seated behind juror number two was uncontradicted (see People v Franqui, 123 AD3d 512). Since the court failed to ask during the third inquiry whether juror number two had fallen asleep during the jury charge, whether he had difficulty staying awake, or about any of defense counsel's specific observations, its determination that juror number two was not grossly unqualified to serve was based on speculation (see People v Porter, 77 AD3d at 773). As the error is not subject to harmless error analysis, the judgment must be reversed. Accordingly, we reverse the judgment and order a new trial.
The defendant's remaining contention need not be reached in light of our determination.
DILLON, J.P., CONNOLLY, CHAMBERS and WOOTEN, JJ., concur.
ENTER:
Maria T. Fasulo
Clerk of the Court